[Nos. 84148-9; 84150-1.   En Banc.]
Argued March 17, 2011.     Decided January 5, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL TYRONE GRESHAM, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. ROGER ALAN SCHERNER, *Petitioner*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for petitioner Gresham.

*Eric W. Lindell* (of *Lindell Law Offices*), for petitioner Scherner.

*Mark K. Roe, Prosecuting Attorney for Snohomish County*, and *Mary K. Webber, Deputy*, and *Daniel T. Satterberg, Prosecuting Attorney for King County*, and *Brian M. McDonald, Deputy*, for respondent.

*Suzanne Lee Elliott* and *Amy I. Muth* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Laura Jones* on behalf of King County Sexual Assault Resource Center, amicus curiae.

¶1 OWENS, J. — Roger Scherner and Michael Gresham were separately charged with child molestation. At trial, relying on the recently enacted RCW 10.58.090, the State successfully introduced evidence that Scherner and Gresham had previously committed sex offenses against other children. In Scherner's case, King County Superior Court ruled that evidence of his prior acts of molestation was also admissible for the purpose of demonstrating a common scheme or plan; in Gresham's case, Snohomish County Superior Court held that evidence of Gresham's prior conviction for second degree assault with sexual motivation was admissible only pursuant to RCW 10.58-.090. We hold that the trial court in Scherner's case did not abuse its discretion in admitting the evidence for the purpose of showing a common scheme or plan and that its failure to give a limiting instruction, once requested, was harmless error. We therefore affirm Scherner's conviction. With respect to *State v. Gresham*, No. 84148-9, because RCW 10.58.090 irreconcilably conflicts with ER 404(b) and governs a procedural matter, we hold that its enactment violates the separation of powers doctrine and that the statute is, accordingly, unconstitutional.[1] We further hold that the admission of evidence of Gresham's prior convic-

---

[1] Because we resolve the case on this basis, we do not address the remaining challenges to the constitutionality of RCW 10.58.090.

tion was not harmless error and reverse his conviction and remand for further proceedings.

## FACTS

### A. Scherner

¶2 In 2007, the State charged Scherner with first degree rape of a child and first degree child molestation. These charges, which were later amended to three charges of first degree child molestation, arose out of a trip Scherner took with his wife and his granddaughter, M.S., from California, where all three lived, to Bellevue, Washington, in the summer of 2001 or 2002 to visit Scherner's sister, Susan Tillotsen. At the time, M.S. was either seven or eight years old.

¶3 While at Tillotsen's house, M.S. slept upstairs in a bedroom with her grandmother. Scherner slept downstairs on a pullout couch. The first night, after Tillotsen and M.S.'s grandmother had gone to bed, M.S. went downstairs to get a glass of water and go to the bathroom, not expecting Scherner to be awake. Scherner was awake, however, and invited M.S. to lie down next to him. When M.S. began to walk upstairs, Scherner again invited her to lie down with him, saying, "It's not going to take long." Scherner 4 Report of Proceedings (RP) at 482. "[N]ot wanting to cause a huge fuss," M.S. crawled under the covers he had pulled back. *Id.* Scherner pushed up her nightgown, placed his hand on her stomach, and then fondled her vagina. M.S. pulled away and ran upstairs. Several nights later, after a movie had ended and the other adults had gone to bed, Scherner again suggested M.S. lie down with him on his bed and again he fondled her genitals. A third incident occurred when M.S. went to use the bathroom downstairs; she walked out of the bathroom to find Scherner awake and sitting up. Scherner first asked if she wanted to lie down with him, and, when she said no, he insisted, telling her it would help him go to sleep faster. When M.S. lay down next to him, he took off her

nightgown and held her for around 10 minutes with one hand over her groin. This time he went further, grabbing her wrist and putting her hand on his penis.

¶4 Out of embarrassment and confusion, M.S. did not reveal Scherner's actions until May 2003. When M.S.'s mother found out, she immediately reached out to Child Protective Services, which led to a police investigation. In the course of the police investigation, evidence of prior instances of child molestation by Scherner came to light. At trial, the State sought to admit testimony of four prior victims: Jobbie Spillane and Shaun Oducado, Scherner's nieces; Suzanne Williamson, the child of close friends of the Scherners; and Naseema Kahn, Scherner's granddaughter. While Spillane was between the ages of 5 and 12 years old, she and her family regularly stayed at Scherner's home around holidays. Once, when Spillane was four or five years old, Scherner took her to the master bedroom and fondled her vagina and performed oral sex on her. For around 15 years, when Spillane stayed overnight at Scherner's home, he would come into her room and engage in similar acts of molestation. This abuse ended in 1987. Scherner's sexual abuse of Oducado occurred when she was 13 years old and consisted of Scherner entering her room at night while she was staying at Scherner's home and performing oral sex on her. Scherner's molestation of Williamson occurred around 1975, when she was around 13 years old, on a trip to Lake Tahoe with several other families. One night after the other adults had gone to bed, Scherner approached Williamson, who was sleeping on the couch, began rubbing her back, and then rubbed her vagina. Kahn was sexually abused by Scherner around 1986 and 1987, between the ages of six and seven. Twice in hotel rooms on trips to Seattle and Disneyland, Scherner went to Kahn's bed at night while others slept and performed oral sex on her.

¶5 Prior to trial, the superior court determined that evidence of Scherner's prior sex offenses involving Spillane, Oducado, Williamson, and Kahn was admissible both under

RCW 10.58.090 and, alternatively, to demonstrate the existence of a common scheme or plan.

¶6 At trial, in addition to the testimony of M.S. and Scherner's prior victims, the State introduced further evidence of Scherner's guilt. The State played an audio recording of a phone call that M.S. made to Scherner confronting him about the molestation. That audio recording included the following exchanges:

M.: Um I just want you to tell me why you did this to me? Why did you touch me?

S: Well, I'm afraid that there's two things that happened. Um, one I had too many drinks and I really didn't realize what was happening, and uh two, I just felt . . . very strongly for you I like you very much, love you and uh I guess I thought [I] was doing the right thing instead of the wrong thing.

. . . .

M: Why did you touch me in my vagina why did you squeeze me and touch me in places that I don't want to be touched? I[']m too young, I was too young for that.

S: Well uh all I got to say, all we can do is, all I can do is say I am sorry I did it. I wish I hadn't and I though[t] I had explained to you why I probably did it. I really had way too much to drink and I wasn't myself.

M: I just need an answer, I was so confused there was everything going on left and right.

S: Well you can . . . understand that I am sorry that it happened and I wish it didn't happen, but there is nothing that I can do to repair it, all I can do is say um understand that I made a mistake. And I am very very sorry that it happened. So try to think that over and I think it will make you feel better if you realize that I made a mistake and you didn't . . . .

. . . .

M: Okay I just don't want it happening to anymore people.

S: It will not, don't you worry about that. I certainly had a wake up call when this all happened.

. . . .

M: It made my trip to Seattle really bad.

S: Yes, I am sure, but you just have to understand that you have to go on with life and you're a great kid. And uh you don't have to feel, feel put down about it all because it's not your fault it[']s mine.

Scherner State's Ex. 33. Nowhere in the recording did Scherner express confusion or surprise at the allegations, nor did he deny them. The State also presented the jury with evidence that Scherner had failed to appear for his originally scheduled trial on February 28, 2008, and instead had absconded to Panama City, Florida, using a false name and carrying more than $14,000 in cash. Scherner was promptly discovered and apprehended on March 6, 2008. In addition to the State's evidence, the jury had the opportunity to assess Scherner's credibility when he testified in his defense.

¶7 The jury convicted Scherner of the three charged counts of first degree child molestation. The court sentenced Scherner to 130 months for each count to be served concurrently. The Court of Appeals affirmed Scherner's conviction. *State v. Scherner*, 153 Wn. App. 621, 225 P.3d 248 (2009). We granted review and consolidated Scherner's case with *State v. Gresham*, No. 84148-9. *State v. Scherner*, 168 Wn.2d 1036, 233 P.3d 888 (2010).

B. Gresham

¶8 In 2008, Gresham was charged with four counts of child molestation in the first degree. The conduct underlying these charges took place between December 1998 and September 2003 and involved a single victim—J.L. J.L. knew Gresham and his wife through her mother and considered Mrs. Gresham to be her godmother. The Greshams also had a daughter, K.G., who was five years younger than J.L., and J.L. would stay overnight at the Greshams' house approximately once a month. The jury was presented with a number of incidents of sexual contact. Three incidents of molestation occurred while J.L. was spending the night at the Greshams' home; on each occasion

Gresham approached J.L. while he believed she was asleep and fondled her. On other occasions, Gresham would wrestle with J.L., making contact of a sexual nature. The final incident occurred while Gresham was baby-sitting J.L. and her siblings in J.L.'s home; Gresham sneaked into J.L.'s room while she appeared to be asleep and fondled her beneath the covers.

¶9 J.L. first revealed the molestation to her mother approximately one year after the final incident. Several years later, she reported the molestation to her counselor as part of a drug and alcohol analysis. Her counselor reported the information, leading to a criminal investigation.

¶10 Prior to Gresham's trial, the court held a hearing to determine the admissibility of evidence of his prior conviction. That conviction involved the molestation of a young girl, A.C., over a period of four years. In that case, Gresham was charged with first degree rape of a child and pleaded guilty to second degree assault with sexual motivation in 1998. Following the hearing, the trial court made detailed findings of fact and conclusions of law, including that the State had not proved the existence of a common scheme or plan and that ER 404(b) therefore barred admission of evidence of Gresham's prior crime. The court found, however, that the same evidence of Gresham's sexual abuse of A.C. was admissible under RCW 10.58.090.

¶11 The jury convicted Gresham of three counts of first degree child molestation and one count of attempted first degree child molestation. For each count, the trial court sentenced Gresham to life in prison without the possibility of parole pursuant to RCW 9.94A.570 and former RCW 9.94A.030(37)(b) (2008). Gresham appealed the admission of evidence about his assault of A.C., arguing that RCW 10.58.090 violates the separation of powers and, as applied to him, is an ex post facto law. The Court of Appeals rejected both of Gresham's arguments and affirmed his conviction. *State v. Gresham*, 153 Wn. App. 659, 663, 223 P.3d 1194 (2009). We granted review and consolidated Gresham's case

with *State v. Scherner*, No. 84150-1. *State v. Gresham*, 168 Wn.2d 1036, 233 P.3d 888 (2010).

## ISSUES

¶12 1. Is evidence of prior sex offenses by Scherner admissible for the purpose of demonstrating a common scheme or plan?

¶13 2. Is RCW 10.58.090 constitutional?

## ANALYSIS

### A. *Standard of Review*

¶14 Issues of constitutional and statutory interpretation are questions of law, and we review questions of law de novo. *Optimer Int'l, Inc. v. RP Bellevue, LLC*, 170 Wn.2d 768, 771, 246 P.3d 785 (2011). Similarly, "[i]nterpretation of an evidentiary rule is a question of law, which we review de novo." *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). Provided the trial court has interpreted the rule correctly, we review the trial court's determination to admit or exclude evidence for an abuse of discretion. *Id.*

### B. *Alternative Admissibility of Scherner's Prior Sex Offenses*

¶15 For Scherner, the admissibility of evidence of his prior sex offenses under the Washington Rules of Evidence is dispositive. We may affirm the trial court on any correct ground. *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). Even absent RCW 10.58.090, the trial court ruled that evidence of Scherner's prior sex offenses was admissible for the proper purpose of showing a common scheme or plan. Scherner argues that the evidence of prior sex offenses is inadmissible under ER 404(b) and that the absence of a limiting instruction is reversible error. We find that the trial court did not abuse its discretion in admitting the evidence. We further hold that while the trial court

erred in refusing to give an appropriate limiting instruction upon Scherner's request, that error was harmless in the context of the case.

### 1. The Evidence Was Admissible

¶16 Addressing the admissibility of Scherner's prior sex offenses begins with a careful understanding of ER 404(b). ER 404(b) provides, in full:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The basic operation of the rule follows from its plain text: certain types of evidence (i.e., "[e]vidence of other crimes, wrongs, or acts") are not admissible for a particular purpose (i.e., "to prove the character of a person in order to show action in conformity therewith"). *Id.* The same evidence *may*, however, be admissible for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice; the list of other purposes in the second sentence of ER 404(b) is merely illustrative. The burden of demonstrating a proper purpose is on the proponent of the evidence. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Where evidence is admissible for a proper purpose, the party against whom the evidence is admitted is entitled, upon request, to a limiting instruction informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character. *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982).

¶17 Properly understood, then, ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character. *Id.* ("*In no case, . . .*

regardless of its relevance or probativeness, may the evidence be admitted to prove the character of the accused in order to show that he acted in conformity therewith." (emphasis added)). Critically, there are no "exceptions" to this rule. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.9, at 497 (5th ed. 2007). Instead, there is one improper purpose and an undefined number of proper purposes. Though the other purposes are sometimes referred to as exceptions, this is simply legal shorthand for "other purposes." In most circumstances, this shorthand is of no consequence and creates little risk of misunderstanding. Only when the term "exception" is read out of context and the plain text of ER 404(b) is ignored does the possibility of confusion arise.

¶18 Washington courts have developed a thorough analytical structure for the admission of evidence of a person's prior crimes, wrongs, or acts. To admit evidence of a person's prior misconduct, "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995)). The third and fourth elements ensure that the evidence does not run afoul of ER 402 or ER 403, respectively. The party seeking to introduce evidence has the burden of establishing the first, second, and third elements. *DeVincentis*, 150 Wn.2d at 17; *Lough*, 125 Wn.2d at 853. It is because of this burden that evidence of prior misconduct is presumptively inadmissible. *DeVincentis*, 150 Wn.2d at 17.

¶19 One proper purpose for admission of evidence of prior misconduct is to show the existence of a common scheme or plan. *Id.* There are two instances in which evidence is admissible to prove a common scheme or

plan: (1) "where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan" and (2) where "an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes." *Lough*, 125 Wn.2d at 854-55. Scherner's case involves the second category. Evidence of this second type of common scheme or plan is admissible because it is not an effort to prove the *character* of the defendant. Instead, it is offered to show that the defendant has developed a plan and has again put that particular plan into action. *Id.* at 861. In order to introduce evidence of the second type of common scheme or plan, the prior misconduct and the charged crime must demonstrate "such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which" the two are simply "individual manifestations." *Id.* at 860. Mere "similarity in results" is insufficient. *Id.* In *DeVincentis*, we clarified that while the prior act and charged crime must be markedly and substantially similar, the commonality need not be "a unique method of committing the crime." 150 Wn.2d at 19-21.

¶20 The trial court admitted evidence of Scherner's molestation of four other girls as evidence of a common scheme or plan after finding, by a preponderance of the evidence, that the alleged prior sex offenses actually occurred and that they exhibited such markedly similar conduct that it was "abundantly clear that they show . . . an overarching plan." Scherner 1 RP at 119. The court also specifically found that the evidence was relevant and weighed the prejudice and probative value. Because the trial court correctly interpreted the rules of evidence, our review is for abuse of discretion. *Foxhoven*, 161 Wn.2d at 174. With respect to evidence of Scherner's abuse of Williamson and Kahn, the implementation of the crime was markedly similar to the charged crime: Scherner took a trip with young girls and at night, while the other adults were asleep, approached those girls and fondled their genitals.

Though there are some differences (e.g., the presence of oral sex), these differences are not so great as to dissuade a reasonable mind from finding that the instances are naturally to be explained as "individual manifestations" of the same plan. *Lough*, 125 Wn.2d at 860. Though the abuse of Spillane and Oducado took place in Scherner's home, the remaining details share such a common occurrence of fact with the molestation of M.S. that we cannot say that the trial court abused its discretion in determining that these were merely individual manifestations of a common plan.

¶21 Finally, we are not inclined to retreat from our holding in *DeVincentis* that the relevant commonality need not be "a unique method of committing the crime." 150 Wn.2d at 20-21. Accordingly, we reject Scherner's argument that evidence of prior misconduct admitted for the purpose of showing a common scheme or plan must be distinct from common means of committing the charged crime.

¶22 In sum, we hold that the trial court did not err in admitting evidence of Scherner's prior molestations of Williamson, Kahn, Spillane, and Oducado for the purpose of demonstrating that Scherner had developed a common plan or scheme, which he again put into action when he molested M.S.

*2. The Trial Court Erred in Failing To Give a Limiting Instruction, but the Error Was Harmless*

¶23 If evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request.[2] *Foxhoven*, 161 Wn.2d at 175; *Saltarelli*, 98 Wn.2d at 362. An adequate ER 404(b) limiting instruction must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a

---

[2] We recently reaffirmed our long-standing rule that the trial court has no duty to give an ER 404(b) limiting instruction sua sponte. *State v. Russell*, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011).

particular character and has acted in conformity with that character. *Cf. Lough*, 125 Wn.2d at 864.

¶24 Scherner requested a limiting instruction, but the specific instruction his lawyer proposed was flawed. The proposed instruction would have informed the jury that evidence admitted to demonstrate a common scheme or plan could not be considered "as evidence that the defendant's conduct in this case conformed with the conduct alleged in the prior allegation." Scherner Clerk's Papers at 272. This is an incorrect statement of the law. Showing conformity between the charged conduct and a common scheme or plan, as evidenced by prior conduct, is precisely what makes the evidence relevant. The State correctly argues that the general rule is that the trial court may properly refuse to give the requested instruction if it is incorrect. *Crossen v. Skagit County*, 100 Wn.2d 355, 360-61, 669 P.2d 1244 (1983). As such, the trial court properly refused to give the proposed erroneous instruction. This does not end the inquiry, however. While it was not error for the trial court to refuse to give an incorrect instruction, we hold that it was error, in this case, for the trial court to fail to give a correct instruction.

¶25 At least in the context of ER 404(b) limiting instructions, once a criminal defendant requests a limiting instruction, the trial court has a duty to correctly instruct the jury, notwithstanding defense counsel's failure to propose a correct instruction. This follows from our pronouncement in *State v. Goebel*, 36 Wn.2d 367, 379, 218 P.2d 300 (1950), that "the court should state to the jury whatever *it determines* is the purpose (or purposes) for which the evidence is admissible; and it should also be *the court's duty* to give the cautionary instruction that such evidence is to be considered for no other purpose or purposes." (Emphasis added.) This approach is also more efficient and better prevents the possibility of unfair prejudice than does the alternative of holding that defense counsel's failure to craft a proper instruction is waiver of the request for a limiting instruc-

tion, thereby relegating the defendant to a personal restraint petition alleging ineffective assistance of counsel.

¶26 Nonetheless, failure to give an ER 404(b) limiting instruction may be harmless. *State v. Mason*, 160 Wn.2d 910, 935, 162 P.3d 396 (2007). The error is harmless " 'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). Had a limiting instruction been given, and the jury had accordingly been prohibited from considering the evidence of Scherner's prior sex offenses for the purpose of showing his character and action in conformity with that character, the remaining overwhelming evidence of Scherner's guilt persuades us that the outcome of his trial would not have been materially affected. M.S.'s detailed testimony, evidence of Scherner's flight from prosecution, the jury's opportunity to assess Scherner's credibility and, perhaps most damning, the recorded phone conversation in which Scherner all but admits his molestation of M.S. all, taken together, establish that there is no reasonable probability that the outcome would have been materially affected by the elimination of the impermissible inference.

¶27 In sum, we hold that evidence that Scherner had previously molested the four children was admissible for the purpose of demonstrating a common scheme or plan and the trial court's failure to give a limiting instruction was harmless error. This is dispositive of Scherner's appeal. Scherner's conviction is affirmed.

## C. Constitutionality of RCW 10.58.090

### 1. Background Information on RCW 10.58.090

¶28 In 2008, the legislature enacted legislation designed "to ensure that juries receive the necessary evidence to reach a just and fair verdict" in cases in which the

criminal defendant is accused of a sex offense. LAWS OF 2008, ch. 90, §§ 1, 2, *codified as* RCW 10.58.090.[3] The law provides that in any criminal prosecution for commission of a sex offense "evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403." RCW 10.58.090(1). The law specifically allows for admission of prior uncharged sex offenses. RCW 10.58.090(5). Prior to admitting evidence of the defendant's commission of another sex offense, the trial

---

[3] RCW 10.58.090 provides, in full:

(1) In a criminal action in which the defendant is accused of a sex offense, evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403.

(2) In a case in which the state intends to offer evidence under this rule, the attorney for the state shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(3) This section shall not be construed to limit the admission or consideration of evidence under any other evidence rule.

(4) For purposes of this section, "sex offense" means:

(a) Any offense defined as a sex offense by RCW 9.94A.030;

(b) Any violation under RCW 9A.44.096 (sexual misconduct with a minor in the second degree); and

(c) Any violation under RCW 9.68A.090 (communication with a minor for immoral purposes).

(5) For purposes of this section, uncharged conduct is included in the definition of "sex offense."

(6) When evaluating whether evidence of the defendant's commission of another sexual offense or offenses should be excluded pursuant to Evidence Rule 403, the trial judge shall consider the following factors:

(a) The similarity of the prior acts to the acts charged;

(b) The closeness in time of the prior acts to the acts charged;

(c) The frequency of the prior acts;

(d) The presence or lack of intervening circumstances;

(e) The necessity of the evidence beyond the testimonies already offered at trial;

(f) Whether the prior act was a criminal conviction;

(g) Whether the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; and

(h) Other facts and circumstances.

court must consider whether the evidence is made inadmissible by ER 403, and the statute provides a nonexclusive list of considerations that trial courts must consider in making that determination. RCW 10.58.090(6). In a number of respects, RCW 10.58.090 resembles Fed. R. Evid. 413 and 414, which apply to trials in which criminal defendants are charged with sexual assault and child molestation, respectively.

¶29 As the previous discussion of ER 404(b) makes clear, evidence of a criminal defendant's commission of other sex offenses was already admissible for proper purposes prior to the legislature's enactment of RCW 10.58.090. In this context, ER 404(b) prohibits the admission of such evidence only for the purpose of demonstrating the criminal defendant's character in order to show activity in conformity with that character. By enacting RCW 10.58.090, the legislature has declared that evidence of the defendant's commission of sex offenses is admissible "notwithstanding Evidence Rule 404(b)." RCW 10.58.090(1). Giving the term "notwithstanding" its plain and ordinary meaning (i.e., "without prevention or obstruction from or by" or "in spite of," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1545 (2002)), as we must, see State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010), and presuming the legislature did not intend to create a merely superfluous statute, see id. at 823, the plain purpose and effect of RCW 10.58.090(1) is to make admissible certain types of evidence that ER 404(b) makes inadmissible. That is, RCW 10.58.090 makes evidence of a defendant's commission of other sex offenses admissible for the purpose of proving the defendant's character (e.g., the defendant is the "child-molesting type") in order to show that the defendant has committed the charged offense in spite of ER 404(b)'s prohibition of admission for that purpose.

*2. RCW 10.58.090 Violates the Separation of Powers Doctrine*

¶30 Gresham argues that RCW 10.58.090 is unconstitutional because its enactment violates the separation of powers doctrine. The party asserting that a statute is unconstitutional bears a heavy burden, for we presume that legislative enactments are constitutional. *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998). "[T]he Legislature speaks for the people and we are hesitant to strike a duly enacted statute unless fully convinced, after a searching legal analysis, that the statute violates the constitution." *Id.* Ultimately, however, it is for the judiciary to determine whether a given enactment violates the constitution. *Id.*

¶31 The separation of powers is implicit in our state constitution and arises from "the very division of our government into different branches." *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). The branches are not "hermetically sealed," but instead "must remain partially intertwined." *Id.* At bottom, the separation of powers doctrine ensures "that the fundamental functions of each branch remain inviolate," *id.*, and that the actions of one branch do not threaten "the independence or integrity or invade[ ] the prerogatives of another," *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975).

¶32 Our separation of powers jurisprudence relating to legislative enactments alleged to conflict with court rules is well developed. "[T]he power to prescribe rules for procedure and practice" is an inherent power of the judicial branch, *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974), and flows from article IV, section 1 of the Washington Constitution, *State v. Fields*, 85 Wn.2d 126, 129, 530 P.2d 284 (1975). The legislature recognized this power in RCW 2.04.190 and RCW 2.04.200. The legislature may also adopt, by statute, rules governing court procedures. "If a statute appears to conflict with a court rule, this

court will first attempt to harmonize them and give effect to both." *Putman v. Wenatchee Valley Med. Ctr., PS,* 166 Wn.2d 974, 980, 216 P.3d 374 (2009). If the statute and the rule "cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters." *Id.*

¶33 RCW 10.58.090 cannot be harmonized with ER 404(b). As discussed, ER 404(b) is a categorical bar to introduction of evidence of prior misconduct for the purpose of showing the defendant's character and action in conformity with that character. There are no exceptions to this rule. RCW 10.58.090(1) provides that evidence of sex offenses, which are undoubtedly "prior crimes, wrongs, or acts," is admissible "notwithstanding Evidence Rule 404(b)." That is, RCW 10.58.090 makes evidence of prior sex offenses admissible for the purpose of showing the defendant's character and action in conformity with that character. In other words, RCW 10.58.090 makes admissible evidence that ER 404(b) declares inadmissible. This is an irreconcilable conflict.

¶34 The State urges that RCW 10.58.090 can be reconciled with ER 404(b) for either of two reasons: (1) because it simply expands the list of exceptions to ER 404(b) or (2) because it leaves admission of evidence of prior sex offenses to the discretion of the trial court. These arguments misunderstand ER 404(b). The first argument has already been addressed—there are no exceptions to ER 404(b). ER 404(b) prohibits admission of evidence of a person's prior misconduct only when it is offered for the purpose of demonstrating the person's character and action in conformity with that character. Even when evidence of a person's prior misconduct is admissible for a proper purpose under ER 404(b), it remains inadmissible for the purpose of demonstrating the person's character and action in conformity with that character. The other purposes for which evidence of prior misconduct are admitted are not, then, "excep-

tions."[4] RCW 10.58.090 would, however, be an exception to ER 404(b); the intent to create an exception is clear from its use of the term "notwithstanding." An exception is incompatible with a categorical rule.

¶35 The State's second proffered method of reconciling RCW 10.58.090 and ER 404(b) also fails. A statute that makes admissible evidence deemed inadmissible by a court rule creates no less of an irreconcilable conflict than does a statute mandating admission of evidence that a court rule provides is inadmissible. Our decision in *City of Fircrest v. Jensen*, 158 Wn.2d 384, 143 P.3d 776 (2006), is not inconsistent. In *Jensen*, the legislature enacted a law providing that challenges to a blood alcohol content test " 'shall not preclude the admissibility of the test once the prosecution or department has made a prima facie showing' " of the requirements enumerated elsewhere. *Id.* at 395 (emphasis omitted) (quoting Substitute H.B. 3055, § 4(4)(c), 58th Leg., Reg. Sess. (Wash. 2004)). This court held that that law did not mandate admission of evidence; admission remained subject to all the rules of evidence. *Id.* at 399. Instead, the import of that case was that the law conflicted with a previous decision of this court, *City of Seattle v. Clark-Munoz*, 152 Wn.2d 39, 93 P.3d 141 (2004). *Clark-Munoz* held that evidence was inadmissible because it failed to comply with Washington Administrative Code regulations. *Id.* at 48. Unlike the case at bar, *Jensen* did not involve a statute that conflicted with any rule of evidence.

¶36 We cannot perceive of, nor has the State suggested, a narrowing construction of RCW 10.58.090 that would render the statute constitutional. The plain text of the statute itself establishes that it applies "notwithstanding

---

[4] This includes the purpose of demonstrating the defendant's "lustful disposition" toward the victim. In that circumstance, the purpose of the evidence is not to demonstrate the defendant's character but to demonstrate the nature of the defendant's relationship with and feelings toward the victim. In that way, such evidence is probative of motive and intent and provides context to the crime. *State v. Cox*, 781 N.W.2d 757, 768 (Iowa 2010).

Evidence Rule 404(b)." RCW 10.58.090(1). The irreconcilable conflict flows from the plain text of the statute.

¶37 Because RCW 10.58.090(1) and ER 404(b) cannot be reconciled, we must determine whether the admissibility of evidence in a criminal case is a substantive or procedural matter. There is not always a "clear line of demarcation" between that which is substantive and that which is procedural. *Smith*, 84 Wn.2d at 501. Instead, we are left with the following "general guidelines":

> Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.

*Id.*

¶38 The admission of evidence in a criminal trial is generally a procedural matter. Definition of the crime and its punishment are substantive matters; admission of evidence is simply the means by which that substantive law is effectuated. *See id.* Moreover, we long ago suggested that the admission of evidence is a procedural matter to be controlled by the courts in *State ex rel. Foster-Wyman Lumber Co. v. Superior Court*, 148 Wash. 1, 14, 267 P. 770 (1928), when we stated that "[i]t seems plain to us that the taking of depositions is an act in the procedure and practice before the courts. It involves the receiving of evidence before the courts, a matter for the courts to determine, and which in no wise trespasses upon the substantive rights of parties."

¶39 The legislature, in enacting RCW 10.58.090, expressed its understanding that evidentiary statutes are substantive law and take priority over conflicting court rules, citing to *State v. Pavelich*, 153 Wash. 379, 279 P. 1102 (1929). LAWS OF 2008, ch. 90, § 1. It is true that in *Pavelich*, this court stated that "[r]ules of evidence constitute substantive law." 153 Wash. at 382. However, that statement

was plainly a dictum, as the holding of that case was that rules relating to a trial court's responsibility to give jury instructions sua sponte are procedural. *Id.* at 385-86. Moreover, context makes the intended meaning of that statement questionable. Another statement the *Pavelich* court approved of was that "[p]rocedure . . . includes in its meaning whatever is embraced by the three technical terms, 'pleading,' 'evidence' and 'practice.' " *Id.* at 381-82 (citing *Kring v. Missouri*, 107 U.S. (17 Otto) 221, 231-32, 2 S. Ct. 443, 27 L. Ed. 506 (1883), *overruled on other grounds by Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)). *Pavelich* also recognizes that rules of evidence are "found in the common law, chiefly, and grow[ ] out of the reasoning, experience and common sense of lawyers and courts." *Id.* at 382. One contemporary commentary noted that *Pavelich* "contains puzzling passages characterizing rules of evidence as part of the substantive law." Edmund M. Morgan & John MacArthur Maguire, *Looking Backward and Forward at Evidence*, 50 Harv. L. Rev. 909, 934 n.65 (1937). The assertion in *Pavelich* that rules of evidence are, categorically, substantive matters is an unpersuasive dictum.

¶40 In sum, RCW 10.58.090 is an unconstitutional violation of the separation of powers doctrine because it irreconcilably conflicts with ER 404(b) regarding a procedural matter.

*3. Admission of Gresham's Prior Sexual Misconduct Was Not Harmless Error*

¶41 We must now determine whether the admission of evidence of Gresham's prior conviction was harmless error. A deceptively simple question confronts us at the outset: do we apply the constitutional harmless error standard or the nonconstitutional harmless error standard? It is true that the statute supporting admission is unconstitutional, but it does not necessarily follow that admission of the evidence is unconstitutional. Under our disposition of

the case, RCW 10.58.090 is not unconstitutional because the constitution, state or federal, prohibits the admission of such evidence, but because the separation of powers doctrine prohibits the legislature from permitting admission in the face of a court rule barring admission. "Unlike many other constitutional violations, which directly damage rights retained by the people, the damage caused by a separation of powers violation accrues directly to the branch invaded." *Carrick*, 125 Wn.2d at 136. In this circumstance, the fact that evidence was admitted pursuant to an unconstitutional statute does not necessarily mean that we are to apply the constitutional harmless error doctrine.

¶42 When the support of RCW 10.58.090 is removed, we are simply left with evidence admitted in violation of ER 404(b). It is well settled that the erroneous admission of evidence in violation of ER 404(b) is analyzed under the lesser standard for nonconstitutional error. *Smith*, 106 Wn.2d at 780. The question, then, is whether, " 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " *Id.* (quoting *Cunningham*, 93 Wn.2d at 831).

¶43 We cannot conclude that the erroneous admission of Gresham's prior conviction was harmless error. Much of the testimony at trial was predicated on the fact of Gresham's prior conviction, including all of A.C.'s testimony and much of J.L.'s parents' testimony. What would remain absent the erroneously admitted evidence would be J.L.'s testimony that Gresham had molested her and her parents' corroboration that Gresham had had the opportunity to do so, along with the investigating officer's testimony. There were no eyewitnesses to the alleged incidents of molestation. While this evidence is by no means insufficient for a jury to convict a defendant, there is a reasonable probability that absent this highly prejudicial evidence of Gresham's prior sex offense, *see Saltarelli*, 98 Wn.2d at 363 ("[I]n sex cases . . . the prejudice potential of prior acts is at its highest."), the jury's verdict would have been materially

affected. Thus, we cannot say that the erroneous admission of the evidence of Gresham's prior conviction was harmless error.

## CONCLUSION

¶44 Because RCW 10.58.090 violates the separation of powers doctrine and there was no other basis for admission of evidence of Gresham's prior crimes, we must reverse Gresham's conviction. We emphasize that the legislature has wide latitude in establishing rules for the courts, both procedural and substantive. In some instances, the rules of evidence themselves invite legislative amendment. *See, e.g.*, ER 402 ("All relevant evidence is admissible, except . . . as otherwise provided by statute."); ER 802 ("Hearsay is not admissible except as provided . . . by statute."); *see also* RCW 9A.44.020 (codification of the "rape shield statute," making certain types of relevant evidence inadmissible in certain circumstances); RCW 9A.44.120 (making certain hearsay statements relating to sexual contact with a child admissible in certain circumstances). Only in those rare cases where a legislative enactment irreconcilably conflicts with a court rule and the rule is procedural in nature will we invalidate the enactment. This is one such circumstance. Because RCW 10.58.090 irreconcilably conflicts with ER 404(b), we hold that the statute violates the separation of powers doctrine and declare it unconstitutional. Admission of evidence of Gresham's prior sex offense was therefore error. Since we cannot determine that the erroneous admission of that evidence was harmless error, we reverse Gresham's conviction and remand for further proceedings.

¶45 As to Scherner, we hold that the evidence of his prior acts of child molestation was admissible for the purpose of demonstrating a common scheme or plan. Thus, even without RCW 10.58.090, the evidence was admissible in his

trial. Admission therefore was not error. We accordingly affirm Scherner's conviction.

C. JOHNSON, CHAMBERS, FAIRHURST, STEPHENS, and WIGGINS, JJ., and ALEXANDER, J. PRO TEM., concur.

¶46 J.M. JOHNSON, J. (concurring in part and dissenting in part) — The State of Washington charged petitioner Michael Tyrone Gresham with "three counts of child molestation in the first degree and one count of attempted child molestation in the first degree for repeatedly molesting an eight-year-old girl from 1998 to 2002." *State v. Gresham*, 153 Wn. App. 659, 663, 223 P.3d 1194 (2009). A jury found Gresham guilty on all four charges. *Id.* The eight-year-old victim in the present case was young J.L. Majority at 417.

¶47 Unfortunately, J.L. was not Gresham's first child victim. Prior to the repeated molestation of J.L., Gresham was convicted of molesting *another* child, a nine-year-old girl. *Gresham*, 153 Wn. App. at 663. Today, the majority reverses Gresham's convictions for molesting J.L. because the jury learned of Gresham's sexual abuse of the other child victim. This result is legally incorrect and ultimately unjust.

¶48 The majority opinion holds that RCW 10.58.090, which allows evidence of a defendant's prior sexual offenses in a criminal prosecution for another sexual offense, violates the separation of powers doctrine. Ironically, the majority concludes that it is *the legislature* that has failed to respect the sovereignty of its sister-branches of government. I disagree. In this case, the shoe is on the other foot.

¶49 I would hold that RCW 10.58.090 is constitutional. There is no irreconcilable conflict between RCW 10.58.090 and ER 404(b), and thus, the statute does not infringe on the power of the judiciary. By striking down RCW 10.58.090, the majority opinion preserves an overly rigid interpretation of ER 404(b) at the expense of the victims of sexual abuse. Moreover, the majority opinion reaches paradoxical

results in the present cases, finding the admission of mere *accusations* against Roger Alan Scherner harmless while reversing Gresham's child molestation convictions due to the admission of his prior *conviction*. I concur in the majority opinion's affirmation of Scherner's convictions. However, with respect to the majority's judgment that RCW 10.58.090 violates the constitution and its reversal of Gresham's child molestation convictions, I respectfully but strongly dissent.

¶50 RCW 10.58.090 does not violate the separation of powers doctrine. The separation of powers is not a one-way street; it requires courts to respect the considered judgments of the legislature as it requires the legislature to respect the judgments of this court. Only where there is an *irreconcilable conflict* between our procedural rules and a rule promulgated by the legislature will we strike the legislative enactment down. *City of Fircrest v. Jensen*, 158 Wn.2d 384, 394, 143 P.3d 776 (2006). " 'The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.' " *Id.* (internal quotation marks omitted) (quoting *State v. Moreno*, 147 Wn.2d 500, 505-06, 58 P.3d 265 (2002)).

¶51 RCW 10.58.090 does not threaten judicial independence or integrity and does not preclude us from effectively administering justice in Washington's courts. Other jurisdictions across the country routinely administer justice through provisions substantially similar to both RCW 10.58.090 and ER 404(b). Both the federal courts and military courts-martial have similar provisions. *See* FED. R. EVID. 404(b); FED. R. EVID. 413-14; MIL. R. EVID. 404(b); MIL. R. EVID. 413-14. Additionally, at least one-fifth of state jurisdictions also allow for a propensity inference in sexual offense cases. *See* 1 EDWARD J. IMWINKELRIED, UNCHARGED MIS-CONDUCT EVIDENCE §§ 2:23, 4:15 (rev. ed. 2009).

¶52 Washington law *already* allows for a propensity inference in cases involving sexual misconduct. In its care-

ful exposition of ER 404(b), the majority correctly notes that the general rule "is a categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character." Majority at 420. Likewise, the majority accurately states that the illustrative list of other purposes for which a party may offer evidence of prior bad acts in the second sentence of ER 404(b) is not a list of " 'exceptions.' " *Id.* at 429.

¶53 However, the majority incorrectly concludes that there are "no exceptions" to ER 404(b). *Id.* at 429. This is not accurate. This court already recognizes the "lustful disposition" exception, notwithstanding ER 404(b), in cases involving sexual misconduct. *State v. Ferguson*, 100 Wn.2d 131, 133-34, 667 P.2d 68 (1983) ("This court has often invoked an *exception* in similar cases to permit evidence of collateral sexual misconduct when it shows a lustful disposition directed toward the offended female." (emphasis added)). If prior sexual assaults against the same victim are probative and relevant evidence, it is hard to see why the same rationale does not apply to similar prior sexual assaults against third parties. 1 IMWINKELRIED, *supra*, at § 4:15, at 4-89 to -90 ("If there is no qualitative difference between [sexual misconduct against the same victim and against a third party] and the uncharged misconduct doctrine does not bar the former, it is difficult to defend an absolute exclusion of misconduct involving third parties."). We can harmonize RCW 10.58.090 and ER 404(b) by viewing the statute as an additional, legislatively created exception.

¶54 The majority tries to distinguish the lustful disposition exception in a footnote. Majority at 430 n.4. The majority opinion argues that when admitting lustful disposition evidence, the purpose of the prior sexual offenses is "not to demonstrate the defendant's character but to demonstrate the nature of the defendant's relationship with and feelings toward the victim." *Id.*

¶55 This is inaccurate. A "disposition" is by definition a description of "[t]emperament or character." BLACK'S LAW

DICTIONARY 539 (9th ed. 2009). Under the lustful disposition exception, the court admits evidence of the defendant's prior sexual misconduct affecting the victim " 'for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged.' " *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991) (quoting *Ferguson*, 100 Wn.2d at 134). A propensity inference by any other name is still a propensity inference—whether directed to the same victim or to third parties.

¶56 Intellectual honesty demands that we recognize lustful disposition evidence for what it is: a propensity inference that, based upon the defendant's past sexual abuse of the victim, he is more likely to have committed the charged sexual offense against the same victim. *See* 1 IMWINKELRIED, *supra*, at § 4:14, at 4-76 ("In some jurisdictions, intellectual honesty triumphed, and the courts eventually acknowledged that they were fashioning a special exception [in sexual offense cases] to the norm prohibiting the use of the defendant's disposition as circumstantial proof of conduct."); *see also* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.26, at 581 (5th ed. 2007) ("The courts have seldom articulated any way of reconciling the traditional lustful-disposition rule with Rule 404(b), but the traditional rule is so ingrained that it is unlikely to change.").

¶57 The legislature has found that allowing the propensity inference in sexual offense cases though court application of RCW 10.58.090 serves important policy goals. Highly probative circumstantial evidence may be considered in cases in which direct evidence rarely exists. Sexual offenders commit their crimes in secret and with an eye toward avoiding detection. Often there is *no* physical evidence of the sexual abuse and *no* third party witnesses. The consequence is that sexual offense cases routinely involve a competition between two lines of conflicting testimony: the

victim's word against the defendant's. This problem is further exacerbated when the victim is a child whose testimony may be impeached due to the victim's tender age and the effects of victimization. Under such circumstances, the jury should not be restricted to decide the case without evidence that the defendant stands previously convicted of sexually assaulting other children.

¶58 It is well established from studies around the country that sexual offenders are repetitious in their predatory conduct, demonstrating very high rates of recidivism. Social scientific studies now confirm empirically what most citizens know by common sense. A person who sexually assaulted others in the past is more likely to reoffend in the future than an individual who lacks such a history. *See* Ellen H. Meilaender, Note, *Revisiting Indiana's Rule of Evidence 404(b) and the* Lannan *Decision in Light of Federal Rules of Evidence 413-415*, 75 IND. L.J. 1103, 1116 (2000) ("[R]esearch supports the conclusion that, 'contrary to the impression yielded by the general literature, [sex] offenders are serious recidivists,' although much of their recidivism goes undetected." (second alteration in original) (quoting A. Nicholas Groth et al., *Undetected Recidivism Among Rapists and Child Molesters*, 28 CRIME & DELINQ. 450, 456 (1982))). Moreover, these empirical studies likely *underestimate* the level of recidivism among sex offenders. *Id.* (citing Lita Furby et al., *Sex Offender Recidivism: A Review*, 105 PSYCHOL. BULL. 3, 4, 27 (1989); Groth et al., *supra*, at 456; Joseph J. Romero & Linda Meyer Williams, *Recidivism Among Convicted Sex Offenders: A 10-Year Followup Study*, 49 FED. PROBATION 58, 63-64 (1985)).

¶59 To recognize the importance of providing the jury with information of a defendant's past sexual offenses, consider Gresham. Between December 1998 and September 2003, young J.L. stayed at Gresham's house on a monthly basis. Majority at 417. While staying at the home, Gresham repeatedly molested J.L., fondling her and sexually touching her. *Id.* The final act of molestation occurred in J.L.'s

own home when Gresham, acting as a baby-sitter, sneaked into her room and fondled her in her bed. *Id.* at 417-18. Like many child victims, J.L. did not reveal the molestation until much time had passed. *Id.* at 418. The criminal investigation occurred several years later. *Id.*

¶60 Due to the secretive nature of Gresham's molestation, there was little evidence of his crime. The jury heard J.L. testify that Gresham molested her, heard her parents testify that Gresham had the opportunity to commit the crimes, and heard a detective discuss the investigation. *Id.* at 433-34. The majority concludes that hearing this evidence alone, a jury might not have convicted Gresham of the charged offenses. *Id.* at 433.

¶61 However, that is not the only evidence that the jury heard in Gresham's case. The jury also based its decision on the fact that Gresham pleaded guilty to sexually molesting *another* young girl over a period of four years. *Id.* at 418. In a justice system aimed at discerning truth, it is hard to understand why the jury should be deprived of such obviously probative and crucial information before rendering its verdict.

¶62 Of course, the decision as to when evidence of prior sexual offenses *should* be admitted in sexual offense trials will continue to remain a hotly debated issue. Important policy concerns weigh heavily on both sides. These matters were heard and presumably considered by the legislature and the governor when adopting this law. It is the constitutional role of the legislature to fully consider the policy adopted in RCW 10.58.090. Our decision in this case should be to respect that legislative decision that is actually supported by both scientific evidence and common sense. As Justice Holmes once noted:

> I think the proper course is to recognize that a state legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution of the United States or of the State, and that Courts should be careful not to extend such prohibitions beyond their obvious meaning by reading

into them conceptions of public policy that the particular Court may happen to entertain.

*Tyson & Brother-United Theatre Ticket Offices, Inc. v. Banton*, 273 U.S. 418, 446, 47 S. Ct. 426, 71 L. Ed. 718 (1927) (Holmes, J., dissenting), *overruled in part on other grounds by Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 61 S. Ct. 862, 85 L. Ed. 1305 (1941).

CONCLUSION

¶63 I would hold that RCW 10.58.090 is a constitutional exercise of legislative power. This court has long allowed propensity inferences in sexual offense cases where prior acts against the same victim were involved, notwithstanding ER 404(b). There is no reason to believe that the legislature's and the governor's determination that the same should apply to similar sexual violations against third parties somehow invades the integrity and independence of the judiciary. Such a legislative determination accords with another important principle of our state constitution: protecting the rights of unusually vulnerable victims. *See* WASH. CONST. art. I, § 35.

¶64 Apparently, the only solution acceptable to the majority is for this court to consider and adopt changes that parallel the provisions of Fed. R. Evid. 413-14 for adoption into the Washington Rules of Evidence. We should do so and incorporate the legislative record for RCW 10.58.090 as part of our record.

¶65 The separation of powers doctrine imposes an obligation on *this court* to respect the considered judgments of the legislature and the governor. Whether courts should admit evidence of prior sexual offenses in sexual offense trials is a contested matter that is amenable to legislative solutions reached after full fact-finding, discussion, and debate at legislative hearings. Based on separation of powers principles I am compelled to the opposite conclusion of the majority. I concur in the majority's affirmation of

Scherner's convictions. With respect to its reversal of Gresham's child molestation convictions, I respectfully but strongly dissent.

¶66 MADSEN, C.J. (dissenting) — The majority invalidates RCW 10.58.090 on the ground that it violates the separation of powers doctrine. The majority concludes that the statute is a procedural rule that cannot be harmonized with ER 404(b), an evidence rule promulgated by this court. I dissent because the statute and the court rule do not conflict and, even if a conflict exists, the two can be harmonized and both given effect.

¶67 Historically, both the legislature and this court have frequently adopted procedural rules. There is no doubt that this is a legitimate use of legislative power; there is no constitutional mandate prohibiting the legislature from doing so. The only time a true constitutional separation of powers problem arises with respect to procedural rules is when this court has established a rule and the legislature subsequently adopts an irreconcilable statute on the same procedural matter. This case does not present such a situation.

¶68 First, the conflict perceived by the majority does not exist. Second, to the extent that the statute and the rule concern the same subject matter, they can be harmonized and each may be given effect. Third, while the statute involves a rule for admissibility of certain kinds of evidence, it also embodies important public policy that the legislature wishes to advance and this court should, where possible, accede to the legislature's declaration of public policy.

¶69 I would hold that the statute does not violate the separation of powers doctrine and therefore dissent from the majority opinion.[5]

## Discussion

¶70 The defendants in these cases argue that RCW 10.58.090 is a procedural rule of evidence that is irreconcilable with ER 404(b) and therefore it must be invalidated on the ground that it violates the separation of powers doctrine. The majority agrees. I do not.

### Separation of powers

¶71 The separation of powers doctrine, while not explicit in our state constitution, is an important recognition of the separate branches of government and the services they provide. The separation of powers doctrine is a cardinal and fundamental principle of our constitutional system. *Wash. State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674, 763 P.2d 442 (1988).

¶72 However, the doctrine is not one of rigid boundaries.[6] The doctrine must be invoked only when there is a true, unavoidable conflict that relates to the court's inherent power as a constitutional branch of government. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 679, 146 P.3d 893 (2006). Otherwise, the doctrine contemplates flexibility and practicality. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). Indeed, given the need for government to

---

[5] I do not address the ex post facto claims raised by the defendants but do not believe that they are valid. I would uphold the statute in the face of both constitutional challenges.

[6] In a phrase that is often repeated, but I fear is not actually given effect in this case by the majority, we have explained that fulfillment of the doctrine does not require that our three branches of government be "hermetically sealed off from one another." *E.g., Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009); *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). Rather, the doctrine ensures that the *fundamental functions* of the three branches of government remain inviolate. *Hale*, 165 Wn.2d at 504; *City of Spokane v. Spokane County*, 158 Wn.2d 661, 679, 146 P.3d 893 (2006).

act responsibly with primary attention given to carrying out those functions necessary to serve the state and its people, it is important that the three branches operate as much as possible in "[h]armonious cooperation." *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975); *accord Wash. State Council of County & City Emps., Council 2 v. Hahn*, 151 Wn.2d 163, 168, 86 P.3d 774 (2004).

¶73 Accordingly, when it appears that a court rule and a statutory enactment conflict, we try to harmonize the two and give each effect. *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 980, 216 P.3d 374 (2009); *City of Fircrest v. Jensen*, 158 Wn.2d 384, 394, 143 P.3d 776 (2006); *State v. Blilie*, 132 Wn.2d 484, 491, 939 P.2d 691 (1997) (the court is committed to making every effort to harmonize the two provisions). Harmonizing is important to give effect to the authority of the legislative branch of government, and in particular it is important here because both this court and the legislature have authority to adopt rules of evidence. *Jensen*, 158 Wn.2d at 394; *see* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE Chairman's Intro. to the Wash. Rules of Evidence at V-IX (2d ed. 1982).

### The statute and the court rule do not conflict

¶74 Looking first to the question whether the statute and the evidence rule conflict, contrary to the majority's view, they do not. ER 404(b) bars the use of evidence of other crimes, wrongs, or acts to prove character 'and the defendants' actions were in conformity with it, and then lists other purposes for which such evidence may nevertheless be admissible.[7] Thus, despite the general prohibition, past acts evidence can be admitted to prove motive, intent,

---

[7] ER 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b).

¶75 RCW 10.58.090(1) provides that when a defendant is accused of a sex offense, evidence of the defendant's commission of other sex offenses is admissible, including uncharged conduct, "notwithstanding Evidence Rule 404(b)," provided that the evidence is not inadmissible under ER 403. The statute also contains a list of factors that a trial court "shall" consider to decide if the evidence should be excluded under ER 403. RCW 10.58.090(6).

¶76 The majority says that the evidence rule and the statute conflict because the evidence rule contains a categorical bar to introduction of evidence of prior misconduct "to prove the character of a person in order to show action in conformity therewith" (majority at 420-21) and the statute authorizes admission of such evidence "notwithstanding Evidence Rule 404(b)." ER 404(b); RCW 10.58.090(1).

¶77 Contrary to the majority, ER 404(b) contains a nonexclusive list of issues on which evidence that first appears to be prohibited under the rule is nevertheless admissible if relevant to any fact in issue. Thus, the rule is not as prohibitive as the majority says; it does permit evidence of past bad acts to be admitted for a number of purposes and the list is nonexclusive.

¶78 Moreover, the majority's reading of "notwithstanding Evidence Rule 404(b)" in RCW 10.58.090 neglects another interpretation that is not only more plausible, but also serves to avoid the majority's conclusion that the statute is unconstitutional. That is, the statute is readily amenable to the interpretation that an additional purpose is added to the list of nonexclusive purposes for which past acts evidence is admissible "notwithstanding" the general rule stated in ER 404(b). The legislature's use of this language, far from ensuring the statute's unconstitutionality, indicates another exception to the rule. So construed, the statute does not contradict ER 404(b)'s general prohi-

bition against using prior acts evidence to prove character—it does not generally make such evidence admissible.

¶79 The statute also incorporates ER 403's balancing test for admissibility as well. RCW 10.58.090(1) and (6)(g) additionally show legislative intent to fit the statute into the context of ER 403 and ER 404.

¶80 The exception carved out by the statute is not incompatible with other exceptions, either. An already recognized exception to the general rule of ER 404(b) is the exception for lustful disposition. Under this exception, the defendant's prior sexual misconduct against the same victim is admissible in order to show the defendant's lustful disposition toward that victim. *E.g.*, *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991); *State v. Camarillo*, 115 Wn.2d 60, 70, 794 P.2d 850 (1990). The evidence is admitted to show the lustful disposition of the defendant against the victim, making it more probable that the defendant committed the charged offense. *Ray*, 116 Wn.2d at 547. By enacting RCW 10.58.090, the legislature has in effect expanded the scope of prior sexual misconduct to include individuals who are not the victims of conduct charged in the case where evidence of prior sexual misconduct may be admissible.

¶81 I would conclude that the statute and ER 404(b) are not in conflict, unlike the majority.

<u>Even if conflict exists, the court rule and the statute can be harmonized</u>

¶82 Next, even if RCW 10.58.090 and ER 404(b) conflict, they can be harmonized. In *Jensen*, we addressed a separation of powers argument with regard to the legislature's enactment of a statute that governed admissibility of blood alcohol content test results in prosecutions for driving under the influence of intoxicants. We determined that the statute, RCW 46.61.506(4)(a), did not violated the separation of powers doctrine, in that it did not mandate admissibility but rather established reliability standards. A trial

court could still assess admissibility under ER 702. *Jensen,* 158 Wn.2d at 397-98. Thus, the statute was permissive, not mandatory, and could be harmonized with the rules of evidence in that a trial court could use its discretion to exclude the test results under the rules of evidence. *Id.* at 399. We held that the statute did not invade the prerogative of the courts or threaten judicial independence, and did not violate the separation of powers doctrine.

¶83 The same type of analysis may be applied here. First, if the court does not readily find that the statute states another exception that will always permit admissibility under ER 404(b), the statute can still be harmonized and given effect. RCW 10.58.090(1) provides that evidence of sex offenses is "admissible" but does not mandate that it be admitted. The statute also contemplates that the trial court will assess the evidence for admissibility under the evidence rules, including ER 404(b). Therefore, a trial court may consider evidence of this type and determine admissibility within the particular context of the individual case. If the evidence is sought to prove a lustful disposition, like the evidence already permitted under a currently recognized exception, for example, the court could admit the evidence for this purpose. But in any case, the trial court would have discretion on admissibility.

¶84 Viewed in this way, the statute may be harmonized with ER 404(b). Because admissibility is not mandated and court discretion is acknowledged, the statute does not invade the prerogative of the courts or threaten judicial independence, and it does not violate the separation of powers doctrine.

### Public policy

¶85 RCW 10.58.090 embodies procedural aspects, to be sure. It provides a rule for admissibility of a certain type of evidence, and thus acts as an evidentiary rule addressing admissibility. However, the statute also embodies public policy concerns that are more akin to substantive law.

¶86 The goal of giving effect to the authority of both the legislature and the court is not necessarily served by drawing the line between substantive and procedural rules. Although it is often said that the power to adopt procedural rules is the province of the judiciary and the legislature's to adopt substantive law, *e.g.*, *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974), this is not strictly true. This court has had occasion to promulgate substantive common law when there is no statute controlling on a subject. For example, we have recognized common law causes of action of loss of consortium. *Ueland v. Pengo Hydra-Pull Corp.*, 103 Wn.2d 131, 691 P.2d 190 (1984) (parental consortium); *Lundgren v. Whitney's, Inc.*, 94 Wn.2d 91, 614 P.2d 1272 (1980) (loss of consortium for wives whose husbands are injured by third party's negligent acts). We have also adopted substantive law respecting ownership of property; for example, we recognized the meretricious relationship doctrine and the principle of a " 'just and equitable' " distribution of property on termination of such relationships. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984) (quoting *Latham v. Hennessey*, 87 Wn.2d 550, 554, 554 P.2d 1057 (1976)); *see also Connell v. Francisco*, 127 Wn.2d 339, 348-50, 898 P.2d 831 (1995). Similarly, the legislature has enacted statutes that establish procedure and has done so specifically with regard to rules for admission of evidence. *E.g.*, RCW 5.60.060 (evidentiary privileges); RCW 5.45.020 (business records).[8] Thus, simply making an inquiry according to the substantive-procedural dichotomy will not necessarily resolve the question whether a statute must be invalidated on separation of powers grounds.

---

[8] The interplay of legislative and court authority is otherwise evident. As we have often noted, RCW 2.04.190 contains a legislative delegation of power to promulgate procedural rules, including rules for admission of evidence in actions in superior and district courts. *E.g.*, *State v. Fields*, 85 Wn.2d 126, 128-29, 530 P.2d 284 (1975); *Jensen*, 158 Wn.2d at 394. This delegation is additional to the court's inherent judicial power under article IV of the Washington State Constitution to govern court procedures.

¶87 The legislature is obviously concerned with the problems posed by offenders who repeatedly commit sexual offenses. Sex offenses have given rise to specialized laws in many contexts. In the arena of sexually violent predators, for example, the legislature has enacted laws governing civil commitment in an effort to both protect the public and to provide for rehabilitation in a specialized environment. The legislature has also enacted special laws regarding sentencing for sex offenders under specified certain circumstances.

¶88 Here, it is apparent that the legislature recognizes that prior sex offenses may be relevant in a prosecution for a sex offense and believes that this is information that, within the trial court's discretion, is important for the jury to know. It seems certain that the legislature believes that just as sexually violent predators may be inclined to recidivism, individuals committing sex offenses may have a "lustful disposition" that can extend to people other than the current victim of a sex offense.

¶89 Insofar as RCW 10.58.090 manifests public policy by furthering the legislative purpose to deal with the problems of repeat sex offenders, it is substantive in nature. This conclusion should not mean that there is no need to consider the separation of powers problem raised by the defendants; the statute still concerns admissibility of evidence.

¶90 The public policy expressed in the statute, however, is of great consequence to resolution of the separation of powers argument. Determining public policy and giving it effect are generally the province of the legislature. *Sedlacek v. Hills*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001). If the court intends to yield to the legislature its authority to make public policy, as we should, the goal of harmonizing ER 404(b) and the statute should be pursued much more vigorously than the majority does. Because it is possible to harmonize RCW 10.58.090 and ER 404(b), even if one believes they conflict, and so permit the legislature's policy to be given effect, this is what the court should do.

450

## Conclusion

¶91 RCW 10.58.090 can be easily construed so that it does not conflict with ER 404(b). The court should do so and avoid the necessity of invalidating the statute as unconstitutional. Even if a conflict is perceived, however, the statute and the court rule can be harmonized and both given effect. The statute does not mandate that evidence of sex offenses *must* be admitted; it provides only that such evidence *may* be permitted, leaving to the courts the discretion necessary for preservation of core judicial functions. The statute should be upheld, not only because the legislature did not encroach on the judiciary's fundamental functions, but also to allow implementation of the public policy advanced by the legislature through the statute.