# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINTON,

        Respondent,

        v.

MARCEL CERDAN SAMPSON,

        Appellant.

DIVISION ONE

No. 67868-0-I

UNPUBLISHED OPINION

FILED: July 1, 2013

DWYER, J. — Marcel Sampson appeals from his convictions of rape of a child in the first degree, child molestation in the first degree, two counts of communication with a minor for immoral purposes, tampering with a witness, and felony violation of a court order. Sampson contends that these convictions must be reversed because the trial court improperly admitted evidence of a prior sexual assault pursuant to RCW 10.58.090, a statute that our Supreme Court has determined is unconstitutional. Because the prosecutor relied on this evidence to argue that Sampson had a propensity to commit the charged sex crimes—an argument that was permissible pursuant to the unconstitutional statute—Sampson contends that the erroneous admission of this evidence had a material effect upon the outcome of his trial. We agree that with respect to Sampson's convictions on the sexually-related charges, the admission of the evidence was not harmless. Accordingly, we remand for a new trial on those counts. As to the other counts, we affirm.

I

In the spring of 2009, the Seattle Police Department initiated an investigation of Sampson based upon the statements of 13-year-old P.R. to her school principal alleging sexual abuse by Sampson. Detective Donna Stangeland, who led the investigation, came to distrust the veracity of P.R.'s account of the events and, consequently, no charges were filed against Sampson based upon P.R.'s allegations.

During the course of the investigation, however, Detective Stangeland also spoke with several of P.R.'s family members. In June 2009, she telephoned Janine Thornton, P.R.'s aunt. After Detective Stangeland explained that she was investigating a sexual complaint against Sampson, Thornton, who had been romantically involved with Sampson in the spring of 2008, decided to speak to her own children regarding their interactions with Sampson during that period.

Thornton asked her eight-year-old daughter, L.R., and her five-year-old son, L.H., whether Sampson had ever touched them. L.R. told Thornton that Sampson had touched her "down below." L.R. also reported that she had witnessed Sampson trying to "put his penis in [L.H.'s] behind." L.H., who was also in the room during the conversation, agreed with his sister that this was true. L.R. also told Thornton that she had witnessed Sampson "playing with himself" and that "white stuff" had come out.

L.R. and L.H. were thereafter interviewed individually by Carolyn Webster, a child interview specialist with the prosecutor's office. L.R. told Webster that Sampson had "touched" both her and her brother. She said that she had

- 2 -

observed Sampson "put his thing" in L.H.'s "butt." She told Webster that L.H was lying on his stomach and that neither L.H. nor Sampson made any noise during this incident. L.R. then told Webster that Sampson had touched L.R.'s "privacy" through her clothes. Webster asked if Sampson had ever asked L.R. to touch his "privacy," and L.R. answered that Sampson had asked but that she had refused. Webster asked L.R. if she had ever seen "something come out of [Sampson's] privacy," and L.R. replied that she had seen "sperm" come out.

In a separate interview, L.H. told Webster that his father had said that Sampson was a sex offender.[1] As had his sister, L.H. reported to Webster that Sampson had stuck "his thing in [L.H.'s] butt." In contrast to L.R.'s version of the event, he told Webster that he had been lying on his back during the incident. L.H. further reported that Sampson had sucked on L.H.'s "wee wee" and that Sampson had "drunk [his] sister's pee." During this interview, L.H. also told Webster that Sampson had been killed by a doctor and that Sampson had "sucked his own wee wee."

Detective Stangeland also contacted Fuhyda Rogers, another former girl friend of Sampson's. Upon learning of the investigation, Rogers asked her four-year-old son, N.P., about his interactions with Sampson. N.P. told Rogers that Sampson would "stick his fingers in [N.P.'s] butt" while N.P. was in the bathtub. Roger's asked N.P. whether he was sure that Sampson had used his fingers and not his "privates." N.P. answered that he was not sure because he did not turn

---

[1] L.H. used the term "sex fielder" in recounting his father's characterization of Sampson. However, despite his mispronunciation, L.H.'s meaning was clear.

around to look. N.P. later repeated this story during an interview with Webster at the prosecutor's office.

Sampson was thereafter charged by amended information with four counts of rape of a child in the first degree based upon the incidents involving L.H. and N.P. and one count of child molestation in the first degree based upon the incident involving L.R.[2] In addition, Sampson was charged with two counts of communication with a minor for immoral purposes based upon an allegation by L.R.'s nine-year-old cousin that Sampson had watched a pornographic movie in the presence of the two girls.[3]

While in jail awaiting trial, Sampson telephoned Rogers on numerous occasions. At least 35 of the calls were placed by Sampson after Rogers obtained a no-contact order against him in July 2009. Based upon the existence of these calls, Sampson was charged with one count of felony violation of a court order—domestic violence.

Sampson also placed several calls to his mother from jail. In one of these conversations, Sampson asked his mother to visit Thornton and offer her money if she would agree not to testify against Sampson. Thornton would later tell the jury that Sampson's mother did in fact come to her house and offer the money.

---

[2] The State further alleged the existence of an aggravating factor with regard to the charges of rape of a child and child molestation in which L.H. and L.R were respectively named as victims. The State asserted that Sampson had used his position of trust and confidence to facilitate the commission of these crimes.

Sampson was also charged with one count of possession of depictions of a minor engaged in sexually explicit conduct in the first degree based upon Sampson's alleged possession of child pornography. This charge was severed from the other counts prior to trial.

[3] In her interview with Webster, L.R. denied that Sampson had ever shown her a "grown-up" movie. At trial, however, L.R. testified that Sampson had shown her and her cousin a "nasty movie" that depicted a naked man and woman "having it."

Based upon this incident, Sampson was also charged with one count of witness tampering.[4]

L.R., L.H., and N.P all testified at trial, repeating to the jury some of the same allegations they had made to Webster during their interviews. However, in contrast to L.R.'s prior statements, at trial, L.R. denied that she had ever witnessed Sampson masturbating. Her brother, L.H., denied that Sampson had ever done anything with his mouth to L.H.'s "front private." L.H. also did not repeat his earlier allegation that Sampson had drunk his sister's urine. Finally, although N.P. told the jury that Sampson had hurt him in the bathtub, he was unable to articulate how this had occurred, first telling the jury that he had forgotten, and then testifying that he believed Sampson had used a "weapon" or his teeth to cause the pain.

In addition to the testimony of these child witnesses, the prosecution offered evidence of a prior criminal conviction involving sexual misconduct by Sampson. Briann Porter, her mother, and aunt each testified regarding a 2005 incident that occurred when Porter was 14 years old. Porter told the jury that she had been raped by Sampson while she was spending the night at her aunt's house. Sampson had pleaded guilty to assault in the second degree and to communicating with a minor for immoral purposes based upon this incident.[5]

---

[4] The State also played recordings of several calls in which Sampson asked a friend named "Red" to track down Thornton and pressure her to refrain from being a witness against him.

[5] Sampson was initially charged with rape of a child based upon the 2005 incident involving Porter. However, following a trial in 2007, the jury was unable to reach a unanimous verdict.

The jury also heard evidence relating to several uncharged incidents of alleged misconduct. Porter testified that Sampson had told her that he had previously had sex with Porter's younger cousin. Christina Rock, a former girl friend of Sampson, testified that Sampson had once told her that he wanted to have a "threesome" with Rock and her 15-year-old sister. Fuhyda Rogers told the jury that she had discovered a video-recording on Sampson's cell phone of her 10-year-old daughter, P.W., naked in the bathroom of Roger's apartment. Finally, P.W. herself testified that while using Sampson's computer, she had found a cartoon of a nude teenage gymnast in the "favorites" folder of Sampson's internet browser.

The State also played audio recordings of several telephone conversations between Sampson and Rogers from the period when Sampson was in jail awaiting trial. In one of the calls, Rogers told Sampson that she was ready for "someone to stand up in church and admit [to being] a child molester." Sampson responded, "You're talking to one." In another conversation, Sampson told Rogers that he needed sexual deviancy treatment. Sampson did not, however, admit to any of the conduct with which he was charged.

Sampson did not testify or call any witnesses.

During closing argument, the prosecutor argued that the numerous reports of sexual abuse indicated a pattern of sexual misconduct by Sampson. The prosecutor noted that the testimony of Porter regarding the 2005 assault demonstrated Sampson's sexual "appetite" for children. In turn, defense counsel argued that there was a reasonable doubt based upon inconsistencies in the

statements of the child witnesses and their close relationships to P.R., the person who had lodged the initial complaint against Sampson.

The jury deliberated for five days. Sampson was thereafter convicted of one count of first degree child rape based upon the conduct involving L.H. Sampson was additionally convicted of child molestation in the first degree, two counts of communication with a minor for immoral purposes, tampering with a witness, and felony violation of a court order. The jury was unable to reach a unanimous verdict with regard to the second child rape count involving L.H. or to either of the two counts involving N.P.

At sentencing, the trial court determined that Sampson had been convicted of a "most serious offense" on two prior occasions. Because Sampson's current convictions of rape of a child in the first degree and child molestation in the first degree were also designated as "most serious offenses," the court sentenced Sampson to life in prison without the possibility of release as a persistent offender.

Sampson appeals.

II

Sampson contends that the trial court erred by admitting evidence of his 2005 sexual assault pursuant to RCW 10.58.090, a statute that our Supreme Court has determined is unconstitutional. Sampson asserts that the jury utilized this evidence to convict Sampson of the charged offenses based upon his propensity to commit such crimes. No limiting instruction was issued by the trial court, and Sampson points to several portions of the record in which the

prosecutor expressly argued, based upon this propensity evidence, that Sampson committed his crimes because he was unable to control his sexual appetite for children. Given the other evidence adduced at trial, we agree that the admission of this evidence cannot be deemed harmless with respect to Sampson's convictions on the sexually-related charges. Accordingly, a new trial is required on the charges of rape of a child in the first degree, child molestation in the first degree, and communicating with a minor for immoral purposes.

ER 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[6] Our Supreme Court has explained that "ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character." State v. Gresham, 173 Wn.2d 405, 420-421, 269 P.3d 207 (2012) (citing State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). The court has explained that there are no exceptions to this rule. Gresham, 173 Wn.2d at 429.

In Gresham, the court determined that RCW 10.58.090—a statute permitting the admission of "evidence of the defendant's commission of another sex offense or sex offenses . . . notwithstanding Evidence Rule 404(b)"— irreconcilably conflicted with the court rule. 173 Wn.2d at 413-14. This statute, the court explained, "makes evidence of prior sex offenses admissible for the

---

[6] "The same evidence *may*, however, be admissible for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Among these purposes are "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, [and] absence of mistake or accident." ER 404(b).

purpose of showing the defendant's character and action in conformity with that character"—precisely the evidence that ER 404(b) declares inadmissible. Gresham, 173 Wn.2d at 429. Because the statute and the court rule could not be harmonized, the court determined that the enactment of RCW 10.58.090 violated the separation of powers doctrine and that the statute was, accordingly, unconstitutional. Gresham, 173 Wn.2d at 429.

Here, relying on RCW 10.58.090, the State successfully introduced evidence of Sampson's 2005 sexual assault of Briann Porter. The trial court determined that this evidence was also admissible under ER 404(b), but not for the purpose of showing a common scheme or plan. Instead, the court explained, under ER 404(b), the evidence was admissible only to show motive or intent.

At trial, Porter was called as the State's second witness.[7] Porter told the jury that she was 14 years old at the time that Sampson had raped her. She testified that she had fallen asleep on the couch before awakening to find Sampson on top of her. Porter told the jury that Sampson put his penis inside her vagina and that it was the "most painful thing" that she had ever felt.

At the conclusion of the evidentiary stage of the trial, the court gave an ER 404(b) limiting instruction to the jury. The instruction applied only to four specific pieces of evidence.[8] With regard to this evidence, the jury was directed to

---

[7] The first witness to testify was Porter's aunt, who testified in detail about the events leading up to 2005 assault.
[8] The court limited the jury's use of the following evidence: statements the defendant made to Briann Porter regarding sexual encounters with Briann's cousin; a cell phone containing a video of P.W., a cartoon of a teenaged gymnast on a computer purported to belong to the defendant, and the defendant's request for sex with the sister of Christina Rock.

consider it "only for the purpose of evaluating the defendant's motive, intent, preparation, or plan in committing the crimes charged by the State in this case." However, the trial court did not issue an instruction limiting the jury's use of the evidence pertaining to the 2005 assault.

During closing argument, the prosecutor began his discussion of the evidence by directing the jury's attention to the 2005 sexual assault. He told the jury that at 14 years old, Porter was "as her mom's described her, a slight girl." "[W]hat that shows you," the prosecutor continued, "is the Defendant's appetite; his appetite for, frankly, children. And that was a start, and that was the backdrop that you saw Briann Porter."

Throughout closing argument, the prosecutor repeatedly returned to this theme. He again reminded the jury of Sampson's "appetite" in discussing the child molestation charges involving L.R. ("[T]he legislature doesn't want to reward someone who has an appetite for children to get away with a crime" by saying that the touching occurred through a child's clothing). The prosecutor further argued that Sampson showed L.R. and her cousin the pornographic video as a result of his sexual appetite. ("[Y]ou can look at all the other evidence, and what his plan is, what is his appetite is, what he was trying to do."). Indeed, the prosecutor expressly argued that Sampson had committed all of his crimes as a result of this appetite:

> [I]f you think of the number of victims he had in a short period of time that he was out of custody, from April 23, 2008 to May 7, 2009, he has an astonishing number of victims. And that's because his appetite, his deviancy[,] . . . had not been treated.

- 10 -

During rebuttal argument, the prosecutor again noted the number of Sampson's alleged victims, listing them by name: "What am I up to, eight? Eight kids." This, the prosecutor told the jury, was further evidence that Sampson "didn't have control over his appetite for kids, and that is an appetite that, as you have seen, the wreckage of his human debris, the real people."

The State does not dispute that the admission of evidence regarding the 2005 sexual assault pursuant to RCW 10.58.090 was error. Nevertheless, it asserts that the error was harmless. Such an error is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). The State contends that, because evidence of the 2005 assault was properly admitted pursuant to ER 404(b) to demonstrate motive or intent, the error resulted in no prejudice to Sampson. We disagree.

Where "evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request."[9] Gresham, 173 Wn.2d at 423. "An adequate ER 404(b) limiting instruction must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in

---

[9] Sampson's counsel did not request a limiting instruction. In general, a trial court has no duty to give an ER 404(b) limiting instruction sua sponte. State v. Russell, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011). However, because evidence of the 2005 assault was also admitted under RCW 10.58.090, any request by counsel for an ER 404(b) limiting instruction would have been futile.

conformity with that character." <u>Gresham</u>, 173 Wn.2d at 423-24.

Here, the trial court issued no such limiting instruction. Nor could it have. RCW 10.58.090—the alternative basis for admission of this evidence—expressly permitted the use of the evidence for any purpose, including "the purpose of showing the defendant's character and action in conformity with that character." <u>Gresham</u>, 173 Wn.2d at 429. Accordingly, consistent with the requirements of the statute, the trial court's instructions simply allowed the jury to consider the 2005 assault for any purpose that it deemed fit.

The question, then, is whether the admission of the propensity evidence, coupled with the absence of a limiting instruction, was harmless. We conclude that it was not. Had an ER 404(b) limiting instruction been authorized, the jury would have been prohibited from considering the 2005 assault for the purpose of showing Sampson's character and action in conformity with that character. Moreover, consistent with such an instruction, any such argument by the prosecutor would have been proscribed.

In <u>Gresham</u>, the court determined that although the trial court had erred by declining to give a limiting instruction, the error was harmless because "the remaining overwhelming evidence of [the defendant's] guilt persuades us that the outcome of his trial would not have been materially affected." 173 Wn.2d at 425. In reaching this conclusion, the court pointed to the detailed testimony of the child victim, evidence of the defendant's flight from prosecution, and the jury's opportunity to assess the defendant's credibility when he testified at trial. <u>Gresham</u>, 173 Wn.2d at 425. Most important to the court was a recorded

telephone conversation in which the defendant essentially admitted to his molestation of the victim. Gresham, 173 Wn.2d at 425. In such circumstances, the court concluded, "there is no reasonable probability that the outcome would have been materially affected by the elimination of the impermissible inference." Gresham, 173 Wn.2d at 425.

By contrast, the remaining evidence presented in this case was by no means overwhelming. The reliability of the child witnesses was, of course, of central importance to the State's case against Sampson. The children's accounts of Sampson's misconduct, however, shifted over the course of the investigation. For instance, although L.R. denied to Webster that she had observed Sampson watching pornography, by the time of trial, L.R. was able to fully corroborate her cousin's allegation that Sampson had shown her a "nasty" movie. Similarly, in his interview with Webster, L.H. stated that Sampson had "sucked his own wee-wee" and "drunk [his] sister's pee." At trial, however, L.H. denied that Sampson had ever done anything with his mouth to L.H.'s "front private." Nor did L.H. repeat his claim that Sampson had drunk his sister's urine. Furthermore, unlike the child witness in Gresham, the children in this case offered few details of Sampson's sexual misconduct.[10] Indeed, at trial, L.H. was unable to articulate any details of Sampson's actions.

_____

[10] As defense counsel noted during closing argument, several of the child witnesses had significant contact with one another throughout the investigation and criminal proceedings. L.H. and L.R were cousins of P.R., the teenage girl who initially alleged sexual abuse by Sampson. L.R. admitted to Webster that P.R. had told L.R. about her allegations against Sampson. For his part, L.H. appears to have taken many cues from his sister. In his initial report to Thornton, L.H. merely repeated L.R.'s description of Sampson's conduct toward him. Indeed, Webster prompted L.H. to discuss Sampson's conduct by asking L.H. what L.R. had told their mother about Sampson.

The length and nature of the jury's deliberations are similarly indicative of the weakness of the State's evidence. The jury deliberated for five full days. It requested to watch video recordings of Webster's interviews with the child witnesses on each day. Nevertheless, at the end of these lengthy deliberations, the jury was unable to reach a unanimous verdict on three of the four rape charges against Sampson.

Significantly, as noted above, the prosecutor explicitly argued that Sampson had acted in conformance with his character when he committed the charged sex offenses. Throughout the proceeding, the prosecutor opposed any restriction on the jury's use of evidence admitted pursuant to RCW 10.58.090. Rather, the prosecutor told the court, the jury must remain free to consider any allegations of sexual misconduct by Sampson "for the purposes it deems fit."

Then, at closing argument, the prosecutor repeatedly urged the jury to determine that Sampson committed the sex crimes in accordance with his character. The 2005 assault of Porter, the prosecutor told the jury, "showed" Sampson's "appetite for children."[11] The prosecutor told the jury that Sampson's crimes—and the resulting "wreckage of his human debris"—were the result of Sampson's lack of "control over his appetite for kids." It was Sampson's uncontrolled appetite, the prosecutor argued, that resulted in his "astonishing number of victims." Had the law allowed for a proper limiting instruction to have

---

[11] The State does not argue, nor could it, that by telling the jury that the 2005 assault evidenced Sampson's "appetite for children," the prosecutor meant only to assert that this evidence showed Sampson's "motive or intent." By characterizing Sampson's proclivities as an "appetite," the prosecutor was clearly arguing that the 2005 assault demonstrated an aspect of Sampson's character.

been given, such arguments by the prosecutor would have been foreclosed.

Given the inconsistencies in the statements of the child witnesses, the nature of the jury's deliberations, and the repeated, impermissible arguments of the prosecutor, there is a reasonable probability that had a limiting instruction been given, the outcome of Sampson's trial would have been materially affected. Accordingly, the trial court's error was not harmless. Sampson is entitled to a new trial on the charges of rape of a child in the first degree, child molestation in the first degree, and communicating with a minor for immoral purposes.[12]

Sampson's convictions, however, were not limited to these sexually-related offenses. The jury also found Sampson to be guilty of the nonsexual offenses of witness tampering and felony violation of a court order. Sampson does not demonstrate how the absence of a limiting instruction or the prosecutor's arguments had any effect upon these determinations by the jury. These offenses are nonsexual in nature and, accordingly, evidence of Sampson's appetite for children was unlikely to have affected the jury's verdict with respect to these charges. Because there is no reasonable probability that evidence of the 2005 assault had any effect on this aspect of Sampson's trial, with respect to these convictions, the error is harmless.

We reverse Sampson's convictions of one count of rape of a child in the

---

[12] The State also contends that the absence of an ER 404(b) limiting instruction was harmless because one of the jury's instructions stated that evidence of Sampson's prior sexual misconduct "on its own is not sufficient to prove the defendant guilty of the crimes charged in this case." This instruction, however, did not sufficiently limit the jury's use of this evidence. While informing the jury that it could not convict Sampson based solely upon the 2005 assault, the instruction nevertheless permitted the jury to consider the 2005 assault as evidence of Sampson's character and propensity to act in conformity with that character.

first degree, one count of child molestation in the first degree, and two counts of communicating with a minor for immoral purposes. We affirm his convictions of witness tampering and felony violation of a court order.[13]

We concur:

_____

_____          _____

---

[13] Sampson initially asserted that reversal of all of his convictions was required because a 13th person was present during the jury's deliberations, was polled, and offered a verdict to the trial court. However, as Sampson later and properly conceded in a letter to this court, an audio recording of the polling indicates that only 12 jurors in fact participated in deliberations and offered a verdict. Accordingly, there was no error.

Given our determination that Sampson is entitled to a new trial on the charges relating to Sampson's alleged sexual misconduct, we do not address Sampson's remaining contentions. We note, however, that with respect to Sampson's assertion that reversal is required because a judge and not a jury determined that Sampson's criminal history included two "most serious offenses," all three divisions of this court have entertained and rejected arguments identical to those which Sampson sets forth in his appeal. See State v. Witherspoon, 171 Wn. App. 271, 286 P.3d 996 (2012), review granted, 177 Wn.2d 1007, 300 P.3d 416 (2013); State v. Williams, 156 Wn. App. 482, 234 P.3d 1174 (2010); State v. Langstead, 155 Wn. App. 448, 228 P.3d 799 (2010).