# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50445-6-II |
| Respondent, | |
| v. | |
| NESTOR RICARDO POZOS-RIVERA, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Nestor Pozos-Rivera appeals his two convictions for child molestation in the first degree. He raises a number of issues in his appeal and in his statement of additional grounds (SAG). Because the trial court erred by admitting prior domestic violence evidence, we reverse and do not address the other arguments and assertions.

## FACTS

Pozos-Rivera and his wife, Cassie,[1] separated. Pozos-Rivera continued to have visitation with his biological daughter, JPM, and her half-sister, SSM.

On one occasion, the two girls went to Pozos-Rivera's house for the weekend. After she had fallen asleep, SSM awoke to find Pozos-Rivera's hand inside her underwear.

The following morning, Pozos-Rivera asked SSM if she wanted to play a biting game. SSM said, "[N]o." 3 Report of Proceedings (RP) at 404. Pozos-Rivera then pinned SSM down, pushed up her shirt and bra, and had oral contact with her breast. SSM did not immediately report the abuse.

---

[1] To avoid confusion, we refer to Cassie Pozos-Rivera by her first name. We intend no disrespect.

Later the following week, SSM had a discussion with Cassie. SSM indicated that she did not want to return to Pozos-Rivera's for the weekend. SSM then disclosed Pozos-Rivera's abuse.

The State charged Pozos-Rivera with two counts of child molestation in the first degree. Pozos-Rivera proceeded to trial.

The State sought to introduce evidence about a previous domestic violence incident against Cassie. Pozos-Rivera objected, arguing it was irrelevant and that its prejudicial effect outweighed its probative value. He further argued the evidence did not satisfy ER 404(b). The court initially granted the motion because "it would be more prejudicial than probative." 2 RP at 100. Upon the State's motion to reconsider, the court heard Cassie's testimony about the domestic violence outside the presence of the jury.

Cassie testified as follows. Approximately eight months prior to the incident with SSM, Cassie and Pozos-Rivera had an argument. During the argument, Pozos-Rivera grabbed Cassie, hit her, and kicked her while she lay on the floor.

Pozos-Rivera called SSM to watch as he kicked Cassie. Pozos-Rivera told SSM that similar abuse would happen to her because she was going to turn out like Cassie. Cassie did not inform the police of the event because she did not want to have her daughters' only father figure removed from their lives. Cassie discussed how, as a result of the incident, she had extensive bruising on her face and body.

The State argued that Cassie's testimony was particularly relevant to explain SSM's delayed disclosure because of what happened shortly after the sexual assault. According to the State, SSM told law enforcement that she confronted Pozos-Rivera a few hours after the assault. The State represented that Pozos-Rivera told SSM that if she disclosed the abuse to Cassie, he was "going to do something to [SSM]." 2 RP at 95. Thus, the State argued that the testimony was

relevant as to SSM's four-day delay in disclosing the abuse because SSM took Pozos-Rivera's threat that he would "do something" to her as a threat that he would beat her as he beat Cassie. 2 RP at 157. The State also said that it expected the defense to point to SSM's delayed disclosure in an attempt to undercut her credibility.

SSM testified at trial and denied ever confronting Pozos-Rivera about the incident. She did not say that Pozos-Rivera threatened to "do something" to her if she told Cassie about the abuse.

Pozos-Rivera argued that a four-day delay was not a long delay relative to most sexual abuse cases. He also contended that the eight months between the domestic violence incident and Pozos-Rivera's abuse of SSM weighed against admissibility. Finally, Pozos-Rivera claimed that the "extreme nature" of the violence could unfairly influence the jurors. 2 RP at 159.

The court ruled that the evidence was admissible under ER 404(b). The court found that it was relevant to explain SSM's delayed reporting of the incident. However, the court did not discuss or balance the testimony's probative value versus its prejudicial effect.

Cassie then testified before the jury about the domestic violence incident. Afterwards, the court gave the following limiting instruction:

> You may have heard evidence concerning alleged misconduct by the defendant on or about February 2015. Such evidence may only be considered by you to the extent you find it relevant to issues of delayed disclosure, if any, by a witness. It is not to be considered by you for any other purpose.

2 RP at 184; Clerk's Papers at 28.

In its closing argument, the State discussed how Pozos-Rivera "grabbed and hit Cassie, he knocked her to the ground. He kicked her in the ribs and the face, and he called for [SSM] to come and watch, to come and see what she would be one day." 4 RP at 482. The State also argued that

3

the evidence of Cassie's injuries from the incident corroborated and bolstered other witnesses', not SSM's, credibility.

The State then argued that the "dynamics of [SSM's] life" discouraged her from immediately reporting the incident. 4 RP at 504. For example, Pozos-Rivera

> called [SSM] in to be shown how violent and dangerous he can be. Talk about an implied threat. "This is what's going to happen to you" is what [Pozos-Rivera] said to [SSM] as he was kicking her mother in the chest and head against the washing machine in that home, that home where a few—eleven—ten months later, that's— that laundry room is right outside the bedroom, right outside the place where [Pozos-Rivera] then chose to molest [SSM] on two occasions in one weekend.

4 RP at 504. The State also argued that Cassie

> set an example that you don't report against [Pozos-Rivera]. [Cassie] didn't call the police after that domestic violence incident. She waited a week and ran away. That kind of role model is what [SSM] grew up with. Her model is, "You don't call the police. You don't report."

4 RP at 504-05. In addition, the State used the evidence to refute potential arguments by the defense that SSM made up the story of abuse, and that Cassie had a desire to get Pozos-Rivera in legal trouble and coached SSM about the abuse. Finally, the State argued that SSM's "disclosure itself shows her credibility. She's afraid of how [Pozos-Rivera] would act because he's demonstrated his violence in the past." 4 RP at 515.

In his closing argument, Pozos-Rivera recognized that SSM witnessed the domestic violence incident. Pozos-Rivera pointed to SSM's delayed disclosure as one reason to disbelieve her testimony. "[The abuse] didn't get reported to the police right away. Others had to tell mom to call the police. [SSM and Cassie] went to family, talked about it, worked it over." 4 RP at 526. Pozos-Rivera also discussed at length that the jury was only to consider the domestic violence incident for the purpose of "why somebody might delay talking to a parent or a guardian." 4 RP at 529.

4

In its rebuttal, the State again referenced the domestic violence incident, this time to refute Pozos-Rivera's claim that SSM had a motive to fabricate either because she wanted to retaliate against her mother or because she disliked JPR. Furthermore, the State used the evidence to refute Pozos-Rivera's argument that SSM misremembered events. "To believe the doubt that [Pozos-Rivera] is trying to put out there, you have to believe that witnessing the—that the trauma of witnessing Cassie . . . being kicked and—in the head and chest would somehow manifest as hallucinating that she was being molested." 4 RP at 533.

The jury found Pozos-Rivera guilty on both counts. Pozos-Rivera appeals.

ANALYSIS

Pozos-Rivera asserts that the testimony from Cassie regarding "domestic violence . . . prejudiced . . . the jury's decision" and was irrelevant.[2] SAG at 1. We conclude that the trial court erred in admitting the evidence under ER 404(b), that the State improperly argued the evidence, and that the errors were not harmless.

I.      ER 404(b)

Evidence of a defendant's prior misconduct is generally not admissible to prove the accused's propensity to commit the crime charged. ER 404(b); *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). However, ER 404(b) allows the introduction of evidence of prior misconduct for other purposes, such as showing motive or intent. *Fisher*, 165 Wn.2d at 744.

---

[2] After reviewing this SAG assertion, we ordered and received supplemental briefing on whether the admission of the domestic violence testimony was error, and if so, whether it was harmless.

"We review a trial court's decision to admit or deny evidence of a defendant's past crimes or bad acts under ER 404(b) for an abuse of discretion." *State v. Fuller*, 169 Wn. App. 797, 828, 282 P.3d 126 (2012). "A trial court abuses its discretion by not following the requirements of ER 404(b) in admitting evidence of a defendant's prior convictions or past acts." *Fuller*, 169 Wn. App. at 828.

When a trial court admits evidence under ER 404(b), it must, along with other steps, conduct an ER 403 analysis and weigh the probative value against the prejudicial effect of the evidence. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). "This analysis must be conducted on the record." *Foxhoven*, 161 Wn.2d at 175.

## II. THE TRIAL COURT'S ANALYSIS

Evidence of a defendant's prior physical abuse may be used to explain a victim's delayed reporting under ER 404(b). *Fisher*, 165 Wn.2d at 746. Here, the State submitted to the court that the evidence of Pozos-Rivera's previous physical abuse of Cassie explained SSM's delayed reporting. The court agreed. Therefore, the court admitted the evidence for a proper purpose.

However, the trial court failed to weigh on the record the probative value of the testimony against its prejudicial effect. Therefore, the court erred in admitting the evidence. "Without such balancing and a conscious determination made by the court on the record, the evidence is not properly admitted." *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981).

## III. HARMLESS ERROR

We analyze evidence admitted in violation of ER 404(b) as nonconstitutional error. *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012). This standard requires that we determine whether, "'within reasonable probabilities, had the error not occurred, the outcome of the trial

6

would have been materially affected.'" *Gresham*, 173 Wn.2d at 433 (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

When a trial court fails to balance on the record, we may decide that the outcome of the trial was not materially affected. When the record is sufficient, we review it to see if the trial court would have admitted the evidence if it had balanced the probative value of the evidence with any prejudice. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 446, 191 P.3d 879 (2008); *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). If it would have admitted the evidence, the inquiry ends. *Carleton*, 82 Wn. App. at 686. However, if we decide that the court improperly admitted the evidence, we then review the record to determine if the result of the trial would have been the same even if the trial court had not admitted the evidence. *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993); *Carleton*, 82 Wn. App. at 686-87.

A.      Court Erred by Admitting the Evidence

ER 403 requires that relevant evidence be excluded if its undue prejudice substantially outweighs its probative value. *Fisher*, 165 Wn.2d at 745. We presume that evidence of a defendant's prior bad acts is inadmissible, and we resolve any doubts on whether to admit the evidence in the defendant's favor. *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006).

"[A]n intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982); *see also State v. Gunderson*, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014) (recognizing the risk of unfair prejudice is very high in domestic violence cases).

7

In weighing the probative value of the domestic violence evidence in this case against its prejudice, we note that three factors are of particular importance. First, the evidence neither established an essential element of the crimes charged nor rebutted an argument made by the defense. Instead, the State sought to use the evidence to rebut a potential argument by Pozos-Rivera.

At the time the trial court made its decision to admit the evidence, Pozos-Rivera had not argued that SSM's delayed reporting constituted a reason to disbelieve her testimony. In *Fisher*, the trial court "expressly conditioned the admission of evidence of physical abuse on defense counsel's making an issue of [the victim's] delayed reporting." 165 Wn.2d at 747. Without the delayed disclosure argument, the evidence was more prejudicial than probative and would not have been admitted. *See Fisher*, 165 Wn.2d at 746. Here, the trial court admitted the evidence with no such caveat. Although, Pozos-Rivera briefly argued in closing that SSM's testimony should be disbelieved because of the delayed disclosure, the evidence of Pozos-Rivera's assault had already been admitted, and the State had already used it in its closing argument.

Second, SSM's delayed reporting of the sexual abuse occurred after four days, a relatively short period of time. When used to explain delayed reporting, the length of the delay is a factor to consider in evaluating the potential probative value of the domestic violence evidence. Prior acts of domestic violence have limited, if any, probative value in explaining a short period of delay.

Third, the State failed to admit the foundational evidence its offer of proof relied upon for admitting the domestic violence evidence. In arguing its admissibility, the State claimed that the

domestic violence testimony was "strong probative evidence" because Pozos-Rivera threatened SSM after the incident, telling SSM that if she told Cassie about the abuse he was "going to do something to [SSM]." 2 RP at 95, 160. Thus, the State argued the evidence was particularly relevant to SSM's delayed disclosure because SSM understood Pozos-Rivera's threat that he would "do something" as a threat that he would beat her as she had witnessed him beat Cassie.

However, in her trial testimony, SSM never testified that Pozos-Rivera threatened her. Because the link between Pozos-Rivera's physical abuse of Cassie and SSM's fear that Pozos-Rivera would beat her if she told Cassie was not established through evidence at trial, Cassie's testimony in effect was not as strongly probative to explain the delay in reporting as that which the State initially argued. *Cf. State v. Scott*, 151 Wn. App. 520, 528-29, 213 P.3d 71 (2009) (concluding that trial court improperly admitted ER 404(b) gang affiliation evidence because the State failed to connect the evidence).

In addition, despite the trial court's limiting instruction, the State used the prior incident of domestic violence for more purposes than simply explaining delayed reporting. In closing argument, the State argued that the evidence of Cassie's injuries from the domestic violence incident corroborated and bolstered other witnesses' credibility, not SSM's. The State used the evidence to refute potential arguments by the defense that SSM fabricated the story of sexual abuse, and that Cassie wanted to get Pozos-Rivera in legal trouble and coached SSM about the abuse. The State also argued that SSM's disclosure in general bolstered her credibility, because if a victim is afraid of serious physical retaliation then she is less likely to report sexual assault due to her belief that reporting could subject herself to retaliation.

In its rebuttal closing, the State continued to discuss the domestic violence testimony. It used the evidence to refute Pozos-Rivera's argument that SSM had a motive to fabricate because she either wanted to get back at her mother or she disliked JPR. And finally, in responding to the defense's argument that SSM misremembered events, the State again drew a connection to the domestic violence testimony. "To believe the doubt that [Pozos-Rivera] is trying to put out there, you have to believe that witnessing the—that the trauma of witnessing Cassie . . . being kicked and—in the head and chest would somehow manifest as hallucinating that she was being molested." 4 RP at 533.

In short, the State used the domestic violence evidence for numerous purposes other than to excuse the four-day delayed reporting. The domestic violence evidence had little probative value. On the other hand, it was highly prejudicial, especially because the State used this evidence for improper purposes. Cassie provided graphic testimony about the domestic violence assault. She described how Pozos-Rivera hit her in her face until she fell to the ground. She described how Pozos-Rivera kicked her in her face and ribs as she laid on the floor. She described how Pozos-Rivera "continued to hit [her] in [her] face until he blacked the whole half of [her] face." 2 RP at 149. She also pointed to her face, describing in detail the extent of the bruising. This evidence was highly prejudicial.

We conclude that the unfair prejudice of the testimony exceeded its probative value. Therefore, if the trial court had properly balanced the evidence on the record, it would have excluded the testimony.

B.      Result of Trial Would Not Have Been the Same

Next, we determine whether the result of trial would have been the same if the trial court had not admitted the domestic violence evidence. Although Cassie's testimony was not critical to establishing an essential element of the crimes charged, and although the court issued a limiting instruction, we cannot conclude that the result of the trial would have been the same if the trial court had not admitted the evidence.

As discussed above, Cassie's detailed and graphic testimony was highly inflammatory and could have incited emotions in jurors which led them to convict Pozos-Rivera, at least in part, based upon their perception of him as a perpetrator of domestic violence.

Additionally, during closing and rebuttal closing the State referenced the testimony on numerous occasions, describing the incident in graphic detail. It also used the evidence for improper purposes.

Finally, Cassie's testimony, although unrelated to sexual abuse, made it easier for a juror to find that Pozos-Rivera did not value family. This case implicated family dynamics. Therefore, Cassie's testimony made it easier for a juror to find that, because Pozos-Rivera devalued family, he molested his stepdaughter.

Due to the inflammatory nature of Cassie's testimony, as well as the State's repeated and extensive use of her testimony beyond the purposes for which it was admitted, we cannot determine, within reasonable probabilities, that if Cassie's testimony was excluded then the outcome of the trial would not have been materially affected. Accordingly, the error in admitting the evidence was not harmless.

We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.