FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 17

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43112-2-II |
| Respondent, | |
| v. | |
| PETER TVEDT, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Peter Tvedt appeals his convictions for one count of second degree child rape and one count of intimidating a witness. He seeks a new trial because testimony from the victim's stepmother was admitted at trial under RCW 10.58.090, which our Supreme Court found unconstitutional. Because admitting the evidence under RCW 10.58.090 was harmless error, we affirm.

## FACTS

### I.    BACKGROUND

At the time of the following events, Tvedt was staying with his daughter, Crystal Pittman, Crystal's husband, Jack Pittman, and Jack's 13-year-old daughter, HP, in their home in Spanaway. On February 22, 2011, HP did not have school. She testified that she awoke in the living room to Tvedt speaking into her ear, telling her that he was going to sexually assault her. After the assault, HP locked herself in the bathroom. Tvedt knocked on the door and said that if she told anyone and he went to jail, he would "beat the shit out of" her when he got out. Report of Proceedings (RP) (Dec. 8, 2011) at 201, 202.

HP noticed that there was a substance later identified as semen on her shirt. She changed her clothes and pretended that she was leaving for school. Tvedt apologized and said that he

would move out if HP wanted him to. She said that he should leave, and he left the house with his belongings.

HP then called her aunt, Joanna Naylor. After hearing that HP was emotionally distraught, Naylor drove to the Pittman house with her friend Jennifer Buchanan. Naylor called Jack[1] and Crystal, who returned home and called the police. Jack and Crystal then took HP to the Child Advocacy Center for a forensic interview and physical examination. HP told both the forensic investigator and a nurse practitioner that Tvedt had sexually assaulted her.

After she had arrived at the Pittman's, Naylor had placed H.P.'s shirt in a plastic bag, which she gave to the police. Forensic DNA analyst William Dean tested the stain on HP's shirt. The stain tested positive as semen and the DNA matched Tvedt's.[2]

Tvedt offered a different version of the events. Tvedt claimed that he had deposited semen on a towel in the bathroom after masturbating in the shower. He claimed that HP transferred the semen to her shirt in an attempt to frame him for rape. He alleged that she had stolen a hundred dollars from his suitcase and was afraid he would inform her parents. Tvedt said that, after he caught her stealing, HP went to the bathroom, where he saw her holding the towel. Tvedt then decided to leave the house. Before leaving, Tvedt called Crystal to tell her that he was moving out. He also retrieved the towel from the bathroom, where it was in a "ruffled" condition. RP (Dec. 13, 2011) at 461. He threw the towel on the front seat of his car and drove to a residence in Puyallup, where his car remained until trial. On February 25, 2011, the State charged Tvedt with one count of second degree child rape and one count of intimidating a witness.

---

[1] For clarity's sake we refer to the Pittmans by their first names. We intend no disrespect.

[2] Dean testified that the odds that it was not Tvedt's semen were 1 in 870 quadrillion.

II.   PROCEDURE

The State made a pretrial motion to admit allegations that Tvedt had attempted to rape Crystal when she was nineteen years old. The trial court heard testimony from Crystal that this incident occurred when she was alone with Tvedt watching television. He asked her to perform oral sex and she refused. He then attempted to force her head toward his lap, but she struggled until he released her. At that point, Tvedt apologized and explained that he had been having problems with Crystal's mother. Crystal did not tell police about the incident, but she did tell her best friend. Crystal testified that she allowed Tvedt to temporarily live in her house in 2011 only because she wanted to believe that he had changed. Crystal did not initially tell the detectives on the scene about the incident, but testified that this was because she was nervous and worried that HP would be taken away from them. The court ruled that Crystal's testimony was admissible under RCW 10.58.090.

At trial, Tvedt testified in his own defense and alleged that he had attacked neither H.P. nor Crystal. He said he was unaware, until February 26, that Crystal had ever made any accusation against him.

The jury found Tvedt guilty of one count of second degree child rape and one count of intimidating a witness. The trial court sentenced him to 114 months to life on the first count and 20 months on the second count, to run concurrently.

ANALYSIS

Tvedt argues (1) that the trial court erred by admitting Crystal's testimony under RCW 10.58.090 because that statute was declared unconstitutional in *State v. Gresham*, 173 Wn.2d 405, 269 P.3d 207 (2012), and (2) that the testimony was not alternately admissible under ER 404(b). The State concedes that RCW 10.58.090 is unconstitutional. We agree with the parties

that the trial court erred by admitting Crystal's testimony under RCW 10.58.090 but hold that the error was harmless.

Because the admission of a defendant's evidence of other crimes is not an error of constitutional magnitude, the admission is harmless if there is a reasonable probability that the outcome of the trial would not have been materially different had the error not occurred. *State v. Kidd*, 36 Wn. App. 503, 507, 674 P.2d 674 (1983). In *Gresham*, the Supreme Court concluded that the admission of the defendant's prior conviction was not harmless error. 173 Wn.2d at 434. There, the remaining admissible evidence consisted solely of the victim's testimony and the victim's parents' corroboration that the defendant had an opportunity to molest the victim. *Gresham*, 173 Wn.2d at 433. Given the remaining evidence, the *Gresham* court held that "there is a reasonable probability that absent this highly prejudicial evidence of Gresham's prior sex offense . . . the jury's verdict would have been materially affected." 173 Wn.2d at 433-34.

By contrast, the admissible evidence in this case is considerably more persuasive than the evidence in *Gresham*. First, there is HP's testimony that Tvedt forced her to perform oral sex. HP also reported the incident to her parents, Naylor, a forensic investigator, and a nurse practitioner shortly after it happened. Second, the DNA recovered from HP's shirt was positively identified as Tvedt's by an overwhelming probability: Dean testified that the odds that the semen was not Tvedt's were 1 in 870 quadrillion. Finally, the version of events that Tvedt offered was utterly incredible. No reasonable juror would believe that 13-year-old HP just happened to become aware of a substance on a towel in the bathroom, shrewdly discerned that the substance was some of Tvedt's semen, and then quickly conceived of a complicated plot to wipe the semen on her own shirt and falsify a report of abuse by Tvedt to prevent him from reporting her previous theft. Thus, the jury could see that Tvedt was making up a fanciful tale to

4

43112-2-II

get out of trouble. Taken together, this evidence is overwhelming, and we conclude there is no reasonable probability that the evidence of Tvedt's actions toward Crystal affected the outcome of the trial. Therefore, any error was clearly harmless and we need not examine the evidence further under ER 404(b). We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Johanson, A.C.J.

Bjorgen, J.

5