# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>FREEDOM AGUILANA DELA LLANA,<br><br>Appellant. | No. 86215-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Freedom Dela Llana[1] appeals his conviction of two counts of child molestation in the first degree, arguing the trial court abused its discretion in admitting testimony that IMS disclosed the abuse to her mother, abused its discretion in admitting other acts evidence under ER 404(b), and erred in imposing certain community custody conditions. Although we conclude that the trial court erred by not conducting an ER 404(b) analysis, the error was harmless. We affirm the conviction, and remand to strike a community custody condition requiring Freedom to pay IMS's counseling fees. We also remand to allow the trial court to either fix an apparent scrivener's error regarding a condition impacting Freedom's fundamental right to parent or exercise discretion to limit Freedom's right to parent through a resentencing hearing.

---

[1] The brief of appellant notes that Freedom uses only his first name, and is referred to as such in the trial record. This opinion will do so as well.

I

The State charged Freedom by information with two counts of child molestation in the first degree, with the aggravator of a pattern of sexual abuse.

In motions in limine, the State moved to admit under the fact of complaint doctrine[2] that IMS disclosed the molestation to her mother and the reason she disclosed at that time. The State argued that this was a "case of late disclosure" and "credibility is always paramount." Freedom argued the doctrine was inappropriate because the complaint happened "anywhere from two to seven years" after the most recent alleged incident. The trial court ruled, "[IMS] can certainly testify as to why she waited and why she disclosed when she did. I think that does go to credibility." The court further stated, "[S]ome testimony as to how the police became involved would be—I would allow that, but generally it would have to be just she told me something, you know, that her uncle did, and then I called the police . . . but nothing specific about the allegations."

Freedom moved to exclude any testimony regarding alleged uncharged bad acts, and argued to bifurcate the two counts of child molestation from the aggravator of a pattern of sexual abuse. The trial court decided both within the context of the motion to bifurcate. The State argued these were not uncharged prior bad acts, but were charged as the aggravator. The State further argued that per statute, evidence of aggravating factors must be given to the jury at the same

_____

[2] The fact of complaint doctrine allows the prosecution in sex offense cases to present evidence that the victim complained to someone after the assault, but the rule admits only such evidence as will establish that the complaint was timely made. State v. Chenoweth, 188 Wn. App. 521, 532, 354 P.3d 13 (2015).

time as the underlying offenses, except in narrow circumstances, which were not present. The trial court denied the motion to bifurcate, ruling that the statute "doesn't seem to contemplate separate evidentiary trials for allegations such as these," and "even assuming [the court had] discretion to do so, [the court thought] in this case where really both the underlying charges and the special allegations come down to the credibility of the same witness or possibly witnesses but mainly the alleged victim in this case," it did not believe it was overly prejudicial or rose to the level of violating a constitutional right. The court did not separately rule on the admissibility of other bad acts.

At trial, IMS testified that when her uncle Freedom visited her house, he would touch her in a way that she did not like. IMS testified the touching first happened when she was approximately 7 or 8 years old, and lasted until she was about 13 or 14 years old. IMS testified that when she was seven or eight, she was lying on the couch with Freedom, "[a]nd we had a blanket over us, and like he reached over, and . . . touched the lower part of my body." IMS did not tell her mother when it occurred because she did not realize what was happening until she became older. IMS testified that the second specific memory of Freedom touching her was when she was approximately 10 years old, and she was watching a movie with her parents, her brother, and Freedom. IMS testified that she was sitting on Freedom's lap with a blanket over them, and Freedom used his hand to touch her vagina. IMS testified that she had "two specific memories of him like touching my vagina, and then I have other memories of like him just like—like touching me weirdly that I didn't like, but he didn't touch my vagina." IMS testified that when

3

she was between 10 and 13, she was sitting in the living room with Freedom and he used his hand to rub up and down on her thigh while she was wearing shorts. Another time, IMS was vacuuming her mother's vehicle while wearing shorts, and Freedom stood behind her and rubbed the back of her thigh and went up IMS's shorts.[3]

IMS testified that she started to realize what was happening to her when she was about 10 or 11. IMS testified that she did not tell her parents about the incidents until August 16, 2020 because she was scared and upset that she did not realize sooner. IMS testified that she disclosed on August 16, 2020 because she saw Freedom with her younger cousin on his lap, and she did not want her cousin "to end up going through the same thing [she] did." IMS testified that after she told her mother that Freedom had touched her inappropriately, her parents confronted Freedom, and Freedom responded, "I'm sorry." IMS testified that the police came to her house that day and took her statement.

IMS's mother testified that IMS disclosed to her that Freedom had touched her. Freedom objected based on hearsay, and the trial court stated that the jury should not consider the statement for the truth of the matter, "[j]ust for how things progressed from there."

The jury convicted Freedom of both counts of child molestation in the first degree, and found that the crimes were committed as part of an ongoing pattern

---

[3] IMS began testifying about a third instance of inappropriate touching, to which Freedom objected because it violated an order in limine to not discuss incidents outside of the charging period. The trial court sustained the objection and instructed the jury to "disregard that last part about something happening when [IMS] was 13."

of sexual abuse. The trial court sentenced Freedom to an indeterminate sentence of 89 months to life for each count, and sentenced him to lifetime community custody. Freedom appeals.

II

Freedom argues the trial court abused its discretion in admitting testimony that IMS had disclosed allegations of sexual abuse to her mother. We disagree.

We review the trial court's admission of evidence for an abuse of discretion. State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The parties dispute whether this evidence is admissible under the fact of complaint doctrine. However, we need not decide whether the evidence is admissible under the doctrine because the evidence was properly admitted on another basis. The State sought to admit IMS's disclosure and the surrounding circumstances to explain the timing of her reporting and the ensuing facts. This evidentiary theory has been upheld by the Washington Supreme Court as well as our court. See State v. Crossguns, 199 Wn.2d 282, 296, 505 P.3d 529 (2022) ("any error in admitting the evidence was harmless because the evidence was properly admitted for other, permissible purposes, including '. . . as *res gestae* in the case to show [RGM]'s state of mind for her delayed disclosure' "); cf. State v. Petrich, 101 Wn.2d 566, 575, 683 P.2d 173 (1984) (once a witness's credibility is in issue, evidence tending to corroborate the testimony may, in the trial court's

discretion, be obtained from an expert witness), abrogated on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988); Chenoweth, 188 Wn. App. at 534 (testimony that victim reported the allegation was admissible to show what investigating officers did next and to provide a basis for their testimony). And, although not relied on by the trial court, the evidence was also admissible to provide context for Freedom's statement that he was sorry when he was confronted by IMS's parents. Statements are not hearsay if used to provide context for the defendant's statements. See State v. Demery, 144 Wn.2d 753, 761-62, 30 P.3d 1278 (2001).[4] Freedom's statement that he was apologetic could be evaluated by the jury only if the jury was informed of the context in which the statement was offered.

With the limitations the trial court imposed on the level of detail that was admissible, any error in admitting the challenged testimony would be harmless. See Crossguns, 199 Wn.2d at 296 (concluding that the trial court erred when it admitted evidence of bad acts for one reason, but any error was harmless because the evidence was properly admitted for other permissible purposes); State v. Foxhaven, 161 Wn.2d 168, 178-79, 163 P.3d 786 (2007) (same). This is because IMS described in her testimony specifically the acts on which the State relied to prove the charges. The challenged out-of-court reports were described in court without any specific content as to the underlying facts, and were no more than that

---

[4] When a trial court admits third party statements to provide context to a defendant's responses, the trial court should give a limiting instruction to the jury, explaining that only the defendant's responses, and not the third party's statements, should be considered as evidence. Demery, 144 Wn.2d at 761-62.

Freedom had touched IMS inappropriately. Any error in admitting this limited evidence would be harmless when IMS separately and in detail described the specific underlying acts in non-hearsay in-court testimony.

III

Freedom argues the trial court abused its discretion in admitting testimony that Freedom had inappropriately touched IMS in the past. Though the trial court erred by not conducting an ER 404(b) analysis on the record, the error was harmless.

To properly admit evidence of prior misconduct under ER 404(b), the trial court must

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). There is a presumption that evidence of prior misconduct is inadmissible, and it is the burden of the party seeking to introduce such evidence to satisfy the first three factors. Gresham, 173 Wn.2d at 420. "This analysis must be conducted on the record." State v. Arredondo, 188 Wn.2d 244, 257, 394 P.3d 348 (2017). Here, after denying the motion to bifurcate evidence of the charged counts from evidence of an ongoing pattern of sexual abuse, the trial court did not conduct any analysis on the record as to whether the evidence was admissible under ER 404(b), including whether the probative value outweighed any prejudicial effect.

7

Such an evidentiary error is harmless when the evidence is admissible for a proper purpose. State v. Sublett, 156 Wn. App. 160, 196, 231 P.3d 231 (2010), aff'd, 176 Wn.2d 58, 292 P.3d 715 (2012). We may uphold the admission of ER 404(b) evidence on any ground that the record supports, "consider[ing] bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995).

In Crossguns, the State charged the defendant with rape of a child in the second degree and child molestation in the second degree of his minor daughter RGM, with aggravators of using a position of trust and an ongoing pattern of sexual abuse of the same victim. 199 Wn.2d at 286. When the State moved to admit evidence concerning his prior uncharged sexual abuse of RGM under ER 404(b), Crossguns argued it was improper propensity evidence. Id. at 286-87. Although the trial court erred when it admitted the evidence to show "lustful disposition," our Supreme Court explained that the error was harmless as the evidence was admissible to show intent, plan, motive, opportunity, absence of mistake, and to prove the aggravating factors for each count. Id. at 296.

Here, like in Crossguns, the ER 404(b) evidence at issue is other uncharged sexual misconduct between the defendant and the victim. The State charged the same aggravating factor as it did in Crossguns and alleged that Freedom engaged in a pattern of sexual abuse. The evidence was plainly relevant and admissible to prove the aggravating factor. Regarding the trial court's failure to balance the probative value of the evidence against any undue prejudice on the record, such

8

an evidentiary error requires reversal only "if the error, within reasonable probability, materially affected the outcome of the trial." State v. Halstien, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). Though "the potential for prejudice from admitting prior acts is 'at its highest' in sex offense cases," the prior misconduct here was admissible for permissible purposes and highly probative of the aggravating factor. State v. Gower, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014) (internal quotation marks omitted) (quoting Gresham, 173 Wn.2d at 433); see State v. Lough, 125 Wn.2d 847, 863, 889 P.2d 487 (1995) ("[T]he true test of admissibility of unrelated crimes is not only whether they fall into a specific exception, but whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged."). Under these circumstances, the trial court's failure to balance on the record whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice had no reasonable probability of materially affecting the outcome of this trial. Because the evidence was admissible on appropriate grounds and was not substantially more unfairly prejudicial than probative, the error is harmless.

IV

Freedom challenges six community custody conditions that the trial court imposed. He claims that the conditions are either unconstitutionally vague, exceed the trial court's statutory authority, or violate his fundamental right to parent. We review community custody conditions for an abuse of discretion and will reverse them only if they are manifestly unreasonable. State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

9

A

Freedom argues the trial court exceeded its statutory authority when it imposed a community custody condition requiring him to pay all restitution and legal financial obligations, including the cost of IMS's crime-related counseling and medical treatment.   We agree.

We review a trial court's statutory authority to impose a community custody condition de novo.   State v. Johnson, 180 Wn. App. 318, 325-26, 327 P.3d 704 (2014).   A trial court can order restitution costs for counseling reasonably related to the offense.   RCW 9.94A.753(3).   When restitution is ordered, the court must determine the amount of restitution due at the sentencing hearing or within 180 days of sentencing.   RCW 9.94A.753(1).   While a trial court can impose community custody conditions as authorized under RCW 9.94A.703, the statute does not include any authorization for a trial court to order an offender to pay restitution. See State v. Land, 172 Wn. App. 593, 604, 295 P.3d 782 (2013) (striking community custody condition requiring defendant to "pay restitution to the victims in the form of payment for their counseling and medical treatment" because the court did not order restitution at sentencing and the "statutory time period [for] requesting restitution ha[d] passed").

Here, the trial court did not order restitution at sentencing, and, insofar as our record shows, did not order it at a subsequent hearing.   In the absence of compliance with RCW 9.94A.753, we direct the trial court to strike the condition requiring payment of counseling fees on remand.

B

Freedom argues that the condition requiring that he "not possess or consume controlled substances unless [he has] a legally issued prescription" is not crime related. He does not show the condition was improper.

RCW 9.94A.703 describes the conditions a court can impose when sentencing a person to a term of community custody. It identifies four categories of conditions: mandatory, waivable, discretionary, and special. RCW 9.94A.703(1)-(4). The statute defines waivable conditions as those that "the court shall order" unless "waived by the court." RCW 9.94A.703(2). "[D]iscretionary conditions" are those that a court may order. RCW 9.94A.703(3). These include a requirement that the offender "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(f). The challenged condition here is a waivable condition, meaning the court had authority to impose it without it being related to Freedom's underlying crimes. RCW 9.94A.703(2)(c); In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 173, 430 P.3d 677 (2018).[5]

C

Freedom argues the trial court erred in imposing the urinalysis and polygraph testing condition because it was not crime related and it is unconstitutionally vague.

---

[5] Freedom argues the trial court abused its discretion in ordering the condition because it did not indicate on the record why it imposed the condition. However, because RCW 9.94A.703(2)(c) requires the court to order this condition unless waived, the trial court was not obligated to articulate why it was imposing the condition.

In its discretion, a court may impose as conditions of community custody "any crime-related prohibitions." RCW 9.94A.703(3)(f). A " '[c]rime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). However, Freedom waived any crime related challenge to the testing condition when he did not object to the condition in the trial court. Under State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (2019), whether a condition of sentence is crime related is a question of fact that we will not review for the first time on appeal.[6] We will, however, consider contentions that solely present questions of law. See State v. Bahl, 164 Wn.2d 739, 751-52, 193 P.3d 678 (2008).

Under the due process principles of the Fourteenth Amendment of the United States Constitution and article 1, section 3 of the state constitution, the vagueness doctrine requires the State to provide citizens with fair warning of proscribed conduct. Id. at 752. A community custody condition is unconstitutionally vague if it either (1) does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). The disputed terms are considered in the context in which they are used, and "[i]f persons of ordinary intelligence can understand what the

---

[6] In State v. Nelson, 4 Wn.3d 482, 565 P.3d 906, 918 (2025), the Washington Supreme Court rejected the argument that there must be a direct nexus between an individual's criminal behavior and random urinalysis testing.

[law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." Id. at 179. A community custody condition "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." City of Seattle v. Eze, 111 Wn.2d 22, 27, 759 P.2d 366 (1988).

In State v. Nelson, 4 Wn.3d 482, 565 P.3d 906, 910, 912 (2025), Nelson challenged two community custody conditions requiring him to submit to breathalyzer and urinalysis testing as violating his right to privacy. Specifically, the urinalysis requirement stated, "Submit to urinalysis testing or other testing to ensure drug-free status." Id. at 910. The court held that Nelson's preenforcement challenge to the conditions was not ripe for review because it required further factual development. Id. at 912. In so holding, the court stated that the two conditions "are not vague; the conditions as written, on its face, are clear." Id. at 913. Because our Supreme Court has previously held that a similar urinalysis testing condition was not unconstitutionally vague, we decline to hold that the condition here is void for vagueness.

Additionally, we decline to hold that the polygraph requirement is unconstitutionally vague. Washington courts have consistently found polygraph testing constitutional as a tool to monitor compliance with treatment of special community custody conditions. State v. Olsen, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017); State v. Riles, 135 Wn.2d 326, 351-52, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010); State v. Combs, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000). The

13

challenged condition states that polygraph examinations are to be used only to ensure compliance with community custody conditions. This is sufficient to advise a fair-minded citizen of the fact they will be subject to testing in order to monitor compliance with any community custody conditions.

D

Freedom argues the requirement that he "perform affirmative acts as required by [the Department] to confirm compliance with the orders of the court" is unconstitutionally vague because it gives the Department "unfettered discretion." We disagree.

"Both the sentencing court and the Department have the authority to impose community custody provisions, but the authority arises from separate statutes." State v. Ortega, 21 Wn. App. 2d 488, 497, 506 P.3d 1287 (2022); compare RCW 9.94A.703 (providing trial court's authority) with RCW 9.94A.704 (providing Department's authority). Under RCW 9.94A.703, the trial court has mandatory community custody conditions that it must impose. RCW 9.94A.703(1)-(2). One of these mandatory conditions is a requirement that the offender "comply with any conditions imposed by the department under RCW 9.94A.704." RCW 9.94A.703(1)(b). And RCW 9.94A.704 permits the Department to require affirmative conduct to the extent the conditions are not contrary to those ordered by the court and do not contravene or decrease any court-ordered conditions. RCW 9.94A.704(4), (6). Additionally, RCW 9.94A.030(10) provided that "affirmative acts necessary to monitor compliance with the order of a court may be required by the department."

14

Here, the trial court ordered Freedom to "perform affirmative acts as required by [the Department] to confirm compliance with the orders of the court." The affirmative acts condition clearly and unambiguously advised Freedom in a manner than an ordinary person would understand that the authority to define other community custody conditions, including requiring affirmative acts to confirm and monitor compliance with court-ordered conditions, was placed with the Department and that Freedom must comply with these conditions. Furthermore, the condition is limited to confirming compliance with other court-ordered conditions. We have previously upheld conditions that monitor compliance with other community custody conditions. See Riles, 135 Wn.2d at 339-40 (discussing polygraph testing and urinalysis testing); Combs, 102 Wn. App. at 952-53 (concluding that polygraph testing may be ordered to monitor offender's compliance with other conditions). Similarly, the affirmative acts condition does not grant the Department unfettered discretion, as the affirmative acts are limited to monitoring compliance with other community custody conditions. We hold that the challenged condition is not unconstitutionally vague.

E

Freedom argues the community custody condition requiring that he consent to DOC home visits is unconstitutionally vague. Freedom does not establish an entitlement to appellate relief.

State v. Cates, 183 Wn.2d 531, 354 P.3d 832 (2015) is instructive. There, the court declined to consider a preenforcement challenge to a condition requiring the defendant to "consent to [Department] home visits to monitor his compliance

15

with other community custody provisions." Id. at 533. The defendant argued his challenge did not require further factual development because the condition, on its face, authorized unconstitutional searches. Id. at 535. However, contrary to the defendant's argument, the condition as written did not authorize any searches, and it was expressly limited to monitoring the defendant's compliance with his supervision. Id. Thus, the court held that the State must attempt to enforce the condition before the facts would be sufficiently developed to address the defendant's challenge on its merits and determine whether the circumstances of enforcement were unreasonable. Id.

Here, Freedom's condition is nearly identical to the condition in Cates.[7] At the time of this appeal, Freedom remains incarcerated pursuant to his term of confinement. Cates controls our analysis in the matter. We conclude that Freedom's challenge is not ripe for review.

We further hold that the condition is otherwise constitutional because, as in Cates, the State's authority is limited to what is necessary " 'to monitor [Freedom's] compliance with supervision.' " Id. at 533; see also State v. Cornwell, 190 Wn.2d 296, 303-04, 412 P.3d 1265 (2018) (an individual's privacy interest in their home can be reduced " 'only to the extent necessitated by the legitimate demands of the operation of the [community supervision] process." (alteration in original) (internal quotation marks omitted) (quoting Olsen, 189 Wn.2d at 125)). Thus, Freedom's claim is not ripe and he does not suffer significant risk of hardship.

---

[7] The only difference in the language of the community custody condition in Cates is that the scope of the search to which Cates was required to consent was "to also include computers which you have access to." 183 Wn.2d at 533.

F

Freedom argues the trial court violated his constitutional right to family association when it did not exempt his children from the condition prohibiting him from remaining overnight in a residence where minor children live or are spending the night.

The trial court has the authority to impose crime-related prohibitions as a condition of a sentence. RCW 9.94A.703(3)(f); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). We review sentencing conditions for abuse of discretion. Id. This remains the standard even where the condition interferes with a fundamental constitutional right, such as the relationship between parent and child. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). However, limitations on constitutionally protected conduct must be "narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation." Bahl, 164 Wn.2d at 757. As such, a sentencing condition that infringes on this fundamental constitutional right may be upheld only if the condition is reasonably necessary to accomplish the essential needs of the State and public order, and must be "sensitively imposed." Warren, 165 Wn.2d at 32. Because the State has a compelling interest in preventing harm and protecting children, State v. Corbett, 158 Wn. App. 576, 598, 242 P.3d 52 (2010), "[t]he fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children," State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001).

In his sentencing memorandum, Freedom proposed that the trial court adopt specific language regarding this community custody condition and two others to protect his fundamental right to parent: "Do not remain overnight in a residence where minor children live or are spending the night <u>unless for the purposes of spending time with your own children or with the approval of the supervising CCO</u>." At the sentencing hearing, the State noted that it had reviewed Freedom's sentencing memorandum, "specifically the proposed or requested modifications to the language used by the Department of Corrections, and [did] not have an objection to that language being modified." The trial court stated it would "adopt the recommended conditions from the Department of Corrections with the revisions that are agreed by the parties and stated in the Defense sentencing memorandum." However, Freedom's judgment and sentence did not reflect the proposed additional language. On appeal, the State argues the court's decision not to impose the modification was deliberate, and justified by the facts of the case. It is not clear from the record whether or not the court intended to impose the modification. We remand for the trial court to either correct the apparent scrivener's error as a ministerial matter, or exercise discretion on the record at a resentencing hearing to limit McCrady's right to parent in the manner the State argues was deliberately done.

IV

We affirm Freedom's conviction, and remand to strike the restitution community custody condition. We further remand to allow the trial court to either correct the community custody condition prohibiting Freedom from remaining

18

overnight in residences where minor children are to reflect the trial court's oral ruling if this was a scrivener's error, or, if the condition was deliberately imposed, hold a resentencing hearing exercising discretion on the record to limit Freedom's right to parent.

_Birk, J._

WE CONCUR: